# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### JANUARY 15, 2002 SESSION

## STATE OF TENNESSEE v. FRANK E. HUEY, RONNIE FINCH & JEFFREY L. GILLS

**Appeal from the Criminal Court for Davidson County**
**No. 98-D-2428      Cheryl Blackburn, Judge**

**Nos. M2000-02793-CCA-R3-CD**
**M2000-02815-CCA-R3-CD**
**M2000-02833-CCA-R3-CD**
**Filed April 5, 2002**

On October 13, 1998, the three Defendants, Frank E. Huey, Ronnie Finch, and Jeffrey L. Gills, were indicted by a Davidson County grand jury for one count of first degree murder, two counts of attempted first degree murder, two counts of aggravated assault, and one count of felony reckless endangerment. After a jury trial, Defendants Huey and Gills were each convicted of one count of facilitation of first degree murder, two counts of facilitation of attempted first degree murder, two counts of aggravated assault, and one count of felony reckless endangerment. Defendant Finch was convicted of one count of facilitation of first degree murder, two counts of facilitation of attempted first degree murder, and two counts of facilitation of aggravated assault. The trial court conducted a sentencing hearing and sentenced Defendants Huey and Gills to effective sentences of 51 years and Defendant Finch to an effective sentence of 49 years. On appeal, all three Defendants contend that (1) the evidence was insufficient to support the jury's verdict as evidenced by all three Defendants being convicted of facilitation and none of them convicted of murder, and (2) the sentences imposed by the trial court were excessive. In addition, Defendants Huey and Finch allege that the trial court erred by admitting evidence of previous altercations between the Defendants and the victims. Defendant Finch further contends that the trial court committed plain error by taking his motion for judgment of acquittal under advisement at the conclusion of the State's proof. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal As of Right; Judgment of the Criminal Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Paul J. Bruno, Nashville, Tennessee, for the appellant, Frank E. Huey; Dwight E. Scott, Nashville, Tennessee, for the appellant, Ronnie Finch; and G. Kline Preston, Nashville, Tennessee, for the appellant, Jeffrey L. Gills.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On May 5, 1998, Jerome Jones was standing on the sidewalk outside his home at 357 Settle Court in Nashville, when Defendant Finch rode by on his bicycle and demanded that Mr. Jones move out of his way. The two argued for several minutes. Mr. Jones testified that during that afternoon he saw Defendant Finch several times outside of his apartment with a gun in his hand. On May 6, Mr. Jones was watching television in his bedroom when he heard a knock on the apartment door. As he entered the living room, he saw the three Defendants. The Defendants wanted to discuss the events of May 5, and Mr. Jones asked them to accompany him to his bedroom because his girlfriend and her children were in the living room. Defendants Huey and Finch accompanied Mr. Jones into the bedroom where Defendant Huey struck Mr. Jones on the head with a pistol, put the gun to his face, and ordered him outside. As Defendant Huey led Mr. Jones into the living room at gunpoint, Michael White, Mr. Jones' cousin, entered the home. Defendant Huey pointed the gun at Mr. White and then walked out of the house. Once outside the house, Defendant Huey fired once into the air. After Defendant Huey's departure, Defendants Gills and Finch left through the back door.

After the altercation, Mr. Jones left the Settle Court area with Harold Blair, who promised to provide Mr. Jones with a firearm for his protection. Word of the altercation between Mr. Jones and the Defendants quickly spread, and, when Mr. Jones returned to his home that evening, two of his uncles, Ben and Leo White, were waiting. Leo White had a firearm in the trunk of his car that he intended to give Mr. Jones.

As Mr. Jones talked with his uncles, Mr. Blair walked toward Mr. Jones' home where Sharon Sanders, Mr. Jones' girlfriend, and her children stood. While Leo White was opening his trunk, gunfire erupted. Leo White was shot once in the leg. Ben White was shot once in the groin and once in the leg. Medical Examiner Dr. Bruce Levy testified at trial that Ben White bled to death as a result of the two gunshot wounds.

Mr. Jones testified at trial that he, Ben White, and Leo White were all unarmed at the time of the attack, and that the gun in Leo White's trunk was never removed. Mr. Jones also testified that he did not see the attackers. According to Mr. Jones, the shooting lasted for approximately thirty seconds and there were numerous shots fired. Sherry Stevens, Mr. Jones' aunt, testified that she was aware of the altercation at Mr. Jones' home. Ms. Stevens observed Defendant Gills walking up the street toward Mr. Jones' apartment just prior to the shooting. She also stated that she saw Defendants Huey and Finch coming around the corner of the apartment building at the same time. Ms. Stevens saw Defendant Gills raise a pistol and open fire in the direction of Mr. Jones. Ms. Stevens was unsure whether Defendants Huey and Finch were also armed.

Christopher Works also witnessed the shooting and testified that he saw Defendant Gills standing in the middle of the street and Defendant Huey at the side of the apartment building with a rifle just prior to the time the shooting began. Mr. Works further stated that he did not see any weapons among the group of people standing on and around Mr. Jones' porch, nor did he see Mr. Jones, Ben White, or Leo White with a weapon. Mr. Works' mother, Janice Goff, also testified that from her front porch she saw Defendant Huey fire a rifle in the direction of Mr. Jones' apartment. She testified that she heard many guns being fired, but did not see anyone around Mr. Jones' apartment returning fire.

Sharon Sanders, Mr. Jones' girlfriend, was sitting on her porch when the shooting started. She testified that she saw Defendant Gills in the street pointing a gun at her apartment. She then saw Gills open fire. Ms. Sanders stated that she, Michael White's wife, and several children were all on or around the porch when the shooting started.

Detective Matt Pilcus of the Metro Police Department testified that he was the first officer to arrive on the scene, and he immediately rendered aid to Ben White. Upon arrival Detective Pilcus stopped a blue truck from leaving the scene, but his attention was diverted to Mr. White before he could question the driver. When he returned later, the truck was empty and locked. Detective Pilcus testified that he did not see any weapons in the vicinity of the victims, Leo and Ben White. Crime Scene Investigator Marsha Brown testified that eight 9 millimeter shell casings, one .45 caliber shell casing and one projectile were found in front of Mr. Jones' apartment. At the corner of the apartment building where Defendant Huey had been seen, fourteen 9 millimeter shell casings, two projectiles and three rifle casings were found. One rifle bullet was recovered from Ben White's body at Vanderbilt Hospital shortly before he died.

Tennessee Bureau of Investigation ballistics expert Steve Scott examined the shell casings found at the scene and determined that several different 9 millimeter pistols and at least one Chinese SKS or Russian AK47 assault rifle were used during the shooting. Mr. Scott testified that as many as eleven and as few as eight guns were used during the shooting.

Defendant Finch contended at trial that he was either not present or was present but did not fire a gun. Defendants Gills and Huey contended at trial that they acted in self-defense or, alternatively, that the shooting was mutual combat. Specifically, Defendants Gills and Huey contended that they did not initiate the gunfight.

Harold Blair testified for Defendant Huey at trial. Mr. Blair stated that he and Mr. Jones were drug dealers, and that he was armed on the night of the shooting. Mr. Blair testified that just prior to the shooting one of Mr. Jones' uncles took a shotgun out of the trunk of a car and cocked it. Mr. Blair observed Defendants Huey and Finch come around the corner of a building with Defendant Huey carrying a rifle. Mr. Blair also saw Defendant Gills in the street with a pistol. According to Mr. Blair, Defendants Huey and Gills opened fire, however, he was unsure whether Defendant Finch had a weapon. Mr. Blair returned fire. Mr. Blair testified that the day after the

shooting his apartment was searched by police officers. Drugs and two guns were recovered. Mr. Blair stated that one of the guns was a Chinese SKS or Russian AK47 rifle.

Phillip Bradford, Mr. Jones' upstairs neighbor, also testified for the Defendants and stated that immediately after the shooting he observed four black males running around the back of the building firing guns into the air. Mr. Bradford also stated that he saw several men loading weapons into a blue car in the front of the building. Mr. Bradford's sister-in-law, Michelle Taylor, also lived above Mr. Jones and testified that she saw four armed men fleeing the area after the shooting. She identified Defendants Gills and Finch as two of those four men. Ms. Taylor further stated that after the shooting she saw a woman with long braids come out of the apartment below her, throw a gun into a blue car, and then run back into the apartment.

## SUFFICIENCY

The Defendants first contend that the evidence presented at trial is insufficient to support the jury's verdicts. We will address each Defendant in turn in the interest of clarity. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

## Frank E. Huey

Defendant Huey was convicted of facilitation of first degree murder, two counts of facilitation of attempted first degree murder, two counts of aggravated assault, and felony reckless endangerment. First degree murder is a premeditated and intentional killing. See Tenn. Code Ann.

§ 39-13-202 (a)(1). Premeditation requires the exercise of reflection and judgment. See Tenn. Code Ann. § 39-13-202 (d). A jury may infer premeditation from the manner and circumstances of the killing. See State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). One acts intentionally when "it is the person's conscious objective or desire to . . . cause the result." Tenn. Code Ann. § 39-11-302. One is guilty of facilitation of first degree murder when, knowing another intends to commit first degree murder, the person knowingly furnishes substantial assistance in the commission of first degree murder. See id. § 39-11-403.

The evidence against Defendant Huey showed that on the day of the shooting he, accompanied by his codefendants, entered Jerome Jones' house. Defendant Huey then struck Mr. Jones with a pistol, left the house, and fired the pistol into the air. Later that evening, several witnesses observed Defendant Huey and his codefendants approach Mr. Jones' apartment, position themselves strategically around the apartment, and open fire on the group standing in front of the apartment which included Mr. Jones, Ben White, and Leo White. Defendant Huey was armed with a rifle. The crowd around the porch ran for cover. However, Ben and Leo White were both shot, and Ben White died from his injuries. The State's medical examiner testified that Ben White died as a result of blood loss due to two gunshot wounds. Detective Kent McAllister testified that medical personnel trying to save the life of Ben White gave him a bullet retrieved from Ben White's body. Tennessee Bureau of Investigation ballistics expert Steve Scott identified that bullet as being fired from a rifle.

Given Defendant Huey's previous altercation with Mr. Jones, and given that Defendant Huey arrived on the scene armed with a rifle and opened fire into a large group of people, we find sufficient evidence for the jury to infer that the Defendant acted intentionally and with premeditation when he fired his rifle. Specifically, the Defendant acted with the intent to kill members of the crowd that surrounded Mr. Jones' apartment. While it may be inferred from the evidence that Defendant Huey, who was identified as being armed with a rifle, fired the shot that killed Ben White, at the very least, he engaged in a deliberate and concerted effort with his codefendants to kill Mr. Jones and his companions. By his presence at the scene and participation in the assault, Defendant Huey provided substantial assistance to his codefendants. Accordingly, we find sufficient evidence to support the Defendant's conviction for facilitation of the first degree murder of Ben White.

For similar reasons, there is sufficient evidence to support the Defendant's conviction for facilitation of the attempted first degree murder of Mr. Jones and facilitation of the attempted first degree murder of Leo White. Facilitation of attempted first degree murder requires that the Defendant provide substantial assistance to one who attempts to commit first degree murder. See Tenn. Code Ann. § 39-11-403. One attempts to commit first degree murder when he or she acts with the intent to commit first degree murder and those actions constitute a substantial step toward the commission of a first degree murder. See Tenn. Code Ann. § 39-12-101.

The Defendant and his codefendants opened fire on a group of individuals which included a person with whom they had a previous violent encounter. While Defendant Huey may have been fortunate enough not to be convicted of attempted first degree murder, it is clear from his presence

at and participation in the shooting that he rendered substantial assistance to those seeking to kill Leo White and Mr. Jones. Accordingly, Defendant Huey's two convictions of facilitation of attempted first degree murder are supported by sufficient evidence.

Although he does not challenge the sufficiency of the convicting evidence, Defendant Huey was also convicted of felony reckless endangerment. One commits felony reckless endangerment when he or she recklessly engages in conduct with a deadly weapon that places or may place another person in imminent danger of death or serious bodily injury. See Tenn. Code Ann. § 39-13-103. The proof showed that the Defendant opened fire upon a large group of individuals, including children. The evidence is clearly sufficient to support this conviction.

The Defendant's contention that he acted in self-defense or in the heat of mutual combat with the victims is a factual issue involving the credibility of witnesses and the weight and value given the evidence which was resolved by the trier of fact. See Morris, 24 S.W.3d at 795; Pappas, 754 S.W.2d at 623. We are bound by that resolution. Accordingly, we find sufficient evidence to support Defendant Huey's convictions. This issue is without merit.

**Jeffrey L. Gills**
Jeffrey Gills was convicted of the same offenses as his codefendant Huey and the evidence against Jeffrey Gills is substantially the same. Accordingly, for the same reasons we found sufficient evidence to support Defendant Huey's convictions, we also find the evidence sufficient to support Defendant Gills' convictions. Specifically, Defendant Gills was involved in the altercation in Mr. Jones' apartment, and he was identified by several witnesses who saw him walking up the street toward Mr. Jones' apartment just prior to the shooting. Sherry Stevens saw Defendant Gills approach the apartment, aim a pistol at the victims, and begin firing into the crowd. Clearly, the evidence supports Defendant Gills' convictions.

**Ronnie Finch**
Ronnie Finch was also convicted of one count of facilitation of first degree murder and two counts of facilitation of attempted first degree murder, and the evidence against Defendant Finch is substantially the same as that presented against his codefendants. Therefore, as with Defendants Gills and Huey, we find sufficient evidence to support Defendant Finch's convictions. Defendant Finch was engaged in the initial argument with Mr. Jones one day before the shooting, and he also accompanied his codefendants to Mr. Jones' apartment the day of the shooting when Defendant Huey struck Mr. Jones with a pistol. Additionally, Sherry Stevens saw Defendant Finch at the scene with Defendant Huey seconds before the shooting began, and Michelle Taylor saw Defendant Finch running from the scene with a gun after the shooting. Accordingly, for the reasons set forth for Defendants Huey and Gills, we find the evidence sufficient to support Defendant Finch's convictions.

**INCONSISTENT VERDICTS**

Next, the Defendants contend that their convictions for facilitation of first degree murder and facilitation of attempted first degree murder should be set aside as inconsistent. Specifically, the Defendants contend that their convictions for facilitation without a conviction of the principal offender evidences a compromised, inconsistent verdict.

This Court addressed this precise issue in <u>State v. Gennoe</u>, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992), a case in which the defendant was convicted of facilitation of sexual battery without his codefendant being convicted as the principal in the crime. This Court cited Tennessee Code Annotated section 39-11-407 which reads in pertinent part as follows:

> In a prosecution in which a person's criminal responsibility is based upon the conduct of another, the person may be convicted on proof of commission of the offense and that the person was a party to or facilitated its commission, and it is no defense that . . . the person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune to prosecution.

Tenn. Code Ann. § 39-11-407. This Court further rejected the <u>Gennoe</u> defendant's argument that, in order to avoid "grossly inconsistent verdicts," an exception to this rule should be created for defendants who are tried together. <u>Gennoe</u>, 851 S.W.2d at 836. In response to this proposition, this Court cited our supreme court's decision in <u>State v. Wiggins</u>, 498 S.W.2d 92, 93 (Tenn. 1973), in which our supreme court adopted the rationale of the United States Supreme Court set forth in <u>Dunn v. United States</u>, 284 U.S. 390, 393 (1932), and held that each count of an indictment is to be treated as a separate indictment and must be individually supported by the evidence, and, therefore, consistency between verdicts on separate counts of an indictment is not necessary. <u>See</u> <u>Wiggins</u>, 498 S.W.2d at 93.

As we stated in <u>Gennoe</u>, we see "no basis to carve out an exception to the facilitation statute based upon constitutional principals. Inconsistent verdicts are not fatal to a conviction." <u>Gennoe</u>, 851 S.W.2d at 836 (citations omitted). Because, as we have stated above, we find ample evidence to support each individual conviction, we find no illegality in the alleged inconsistencies of the verdicts. This issue is without merit.

**EVIDENCE OF PREVIOUS ALTERCATIONS**

Defendants Huey and Finch contend that the trial court erred in admitting testimony concerning the altercation on May 5 between Defendant Finch and Mr. Jones and the altercation in Mr. Jones' home early on the day of the shooting. The trial court admitted the testimony after a hearing on its admissibility. The trial court found that pursuant to <u>State v. Gilliland</u>, 22 S.W.3d 266, 272 (Tenn. 2000), the need for completeness necessitated the admission of the evidence. The Defendants maintain that the prejudicial nature of the evidence far outweighed its probative value. We disagree.

Tennessee Rule of Evidence 404 (b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character. However, such evidence may be admissible for other purposes. Id. In Gilliland, our supreme court held that evidence of prior crimes, wrongs, or acts may be admitted into evidence if necessary to provide a contextual background. See Gilliland, 22 S.W.3d at 272. Prior to admitting the evidence, the trial court must make the following findings:

> (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Id. If the trial court makes the requisite findings, its decision should not be disturbed absent an abuse of discretion. Id. at 273.

In the present case, the trial court made the findings required by Gilliland. The trial court ruled that the evidence was necessary to give the jury a complete view of the ongoing disagreement between Mr. Jones and the Defendant. Without the evidence, the trial court feared that the jury would draw the mistaken conclusion that the shooting was simply a random act of violence. The trial court specifically found that the probative value in giving the jury a complete picture of the events surrounding the shooting outweighed the danger of unfair prejudice. To insure that the Defendants would not be unfairly prejudiced by the testimony, the trial court instructed the jury that they could not consider the evidence as proof of the Defendants' disposition to commit a crime for which they were on trial.

We find no error in the trial court's admission of the evidence. This issue is without merit.

## SENTENCING

The Defendants further contend that the trial court misapplied enhancement factors and erred in not applying several mitigating factors, thus, inappropriately sentencing each Defendant to the maximum sentence for each count. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for

rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

**Frank E. Huey**

Defendant Huey contends that the trial court erred in finding that he was a leader in the commission of the offense and that he willfully inflicted bodily injury. See Tenn. Code Ann. § 40-35-114 (2), (12). The presentence report shows that at the time of sentencing the Defendant was a thirty-one year old, married male with six children and a relatively steady employment history. The report also reveals an extensive misdemeanor criminal history including several convictions for drug possession and one misdemeanor theft conviction.

The Defendant was convicted of facilitation of first degree murder, a Class A felony, two counts of facilitation of attempted first degree murder, Class B felonies, and reckless endangerment, a Class E felony. See Tenn. Code Ann. §§ 39-11-403(b); 39-12-101; 39-13-103(b); 39-13-202. The Defendant was determined to be a Range I standard offender on each count. The Defendant faced sentence ranges of 15 to 25 years for the Class A felony, eight to twelve years for the each of the Class B felonies, and one to two years for the Class E felony. See Tenn. Code Ann. § 40-35-112(a)(1)-(5). The trial court found no applicable mitigating factors, but five applicable enhancement factors and sentenced the Defendant to the maximum sentence on each count for an effective sentence of 51 years. The Defendant now challenges the trial court's refusal to consider his mitigating factors, as well as, the trial court's application of enhancement factors (2) and (12). See Tenn. Code Ann. § 40-35-114 (2), (12).

The Defendant set forth the following five mitigating factors for the court's consideration:
(1) the Defendant acted under strong provocation;
(2) substantial grounds exist tending to excuse or justify the Defendant's criminal conduct, though failing to establish a defense;
(3) the Defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;
(4) the Defendant turned himself in to police; and
(5) the Defendant has a wife and six children that require his support.
See id. § 40-35-113(2), (3), (11) and (13). In rejecting the Defendant's mitigating factors the trial court found as follows:

I know the defense has decided that he acted under strong provocation. I don't think arming yourself with a rifle, going and standing at the side of a building and shooting at individuals that include children, that there's any provocation there, and the facts of this case don't support that. There is[sic] no grounds to justify that conduct and looking at factor number eleven, that there is no sustained intent to violate the law, well Mr. Hughey's[sic] past history, in addition to the testimony in court this morning from Officer Wells, would indicate there is a sustained intent to violate the law.

Now, [f]actor [n]umber [t]hirteen, turning yourself in, the fact that you have six children. You know, the fact that you turn yourself in, I'll consider but I'm not going to give that any weight. So, basically, except for that, I'm not finding that any mitigating factor, and I'm considering all of them, applies in this case.

The record supports the trial court's findings and we find no error in the court's rejection of the Defendant's proposed mitigating factors.

Defendant Huey challenges only two of the five enhancement factors applied by the trial court. First, the Defendant challenges the trial court's finding that he was a leader in the commission of an offense involving two or more actors. See Tenn. Code Ann. § 40-35-114 (2). The Defendant contends that this enhancement factor cannot apply to a defendant who has been convicted of mere facilitation. Despite the Defendant's contentions, this Court has previously held that a defendant convicted of the facilitation of a crime may be considered a leader in the commission of the offense because the application of the factor does not require that the defendant be the sole leader, only that he be a leader. See State v. Robinson, 971 S.W.2d 30, 36 (Tenn. Crim. App. 1997) (defendant convicted of facilitation of second degree murder found to be a leader in the commission of the offense); State v. Oneal Sanford, No. E1999-02089-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 440, at *22-23 (Knoxville, June 18, 2001) (defendant convicted of facilitation of attempted especially aggravated robbery and facilitation of aggravated assault found to be leader in the commission of the offense).

In applying this enhancement factor, the trial court referred to the Defendant's leadership in the altercation prior to the shooting at Mr. Jones' home as well as the circumstantial evidence that suggested that the bullet that killed Ben White was fired by the Defendant. We find that this enhancement factor is supported by the record; therefore, no error was committed in its application.

Next, the Defendant challenges the trial court's finding that he willfully inflicted bodily injury on another person during the commission of the offense, and, alternatively, that his actions resulted in the death of or serious bodily injury to a victim or a person other than the intended victim. See Tenn. Code Ann. § 40-35-114 (12). The trial court applied this enhancement factor to the Defendant's convictions for facilitation of the first degree murder of Ben White and facilitation of the attempted first degree murder of Leo White.

In applying this enhancement factor, the trial court relied on State v. Freeman, 943 S.W.2d 25, 32 (Tenn. Crim. App. 1996), which held that the willful infliction of bodily injury required for the application of the enhancement factor was not an inherent element of the offense of facilitation of attempted first degree murder. While the trial court properly construed Freeman as it applies to the facilitation of attempted first degree murder conviction, we believe that the trial court erred applying this enhancement factor to the facilitation of first degree murder conviction. Clearly, "bodily injury" is encompassed in the elements of facilitation of first degree murder which requires that a "killing" take place. See id.; Tenn. Code Ann. § 39-13-202 (a)(1). Therefore, the first prong of the enhancement factor requiring "bodily injury" is inapplicable to the Defendant's conviction for facilitation of first degree murder because it is contained within the offense.

The trial court also determined that enhancement factor (12) could be applied to the conviction for facilitation of first degree murder under the second prong of the factor; specifically, that the actions of the Defendant resulted in the death or serious bodily injury of a person other than the intended victim. The trial court stated that the factor was applicable due to the gunshot wound suffered by Leo White. However, the trial court failed to make a finding that the injury suffered by Leo White constituted a "serious bodily injury." In fact, the trial court stated earlier in the sentencing hearing that the injuries suffered by Leo White "weren't extraordinary." Accordingly, we find that the trial court erred in applying the enhancement factor to the Defendant's conviction for facilitation of first degree murder.

We also find that the trial court erred in applying enhancement factor (12) to the Defendant's conviction for facilitation of the attempted first degree murder of Leo White. There is no evidence in the record that the Defendant willfully inflicted bodily injury. The proof at trial failed to establish who fired the bullets that struck Ben and Leo White. Furthermore, the second prong of enhancement factor (12) is inapplicable to the Defendant's convictions for two reasons. First, as discussed above, the proof does not support a finding that Leo White suffered "serious bodily injury." Second, the trial court's finding that the actions of the Defendant resulted in the death of or serious bodily injury to a person other than the intended victim is not supported by the applicable law. We have consistently held that a trial court may not enhance a defendant's sentence based upon the fact that the offense involved more than one victim, pursuant to Tennessee Code Annotated section 40-35-114(3), when the defendant has been convicted of the offenses committed against each victim. See State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). We see no reason why this rationale would not also preclude the enhancement of a defendant's sentence under enhancement factor (12) when a conviction has been obtained against the defendant for the serious bodily injury or death suffered by the person other than the intended victim. Therefore, because the Defendant was convicted of facilitation of the first degree murder of Ben White, the death of Ben White may not be used to enhance the Defendant's sentence for facilitation of the attempted first degree murder of Leo White. Accordingly, the trial court erred in applying enhancement factor (12) to the Defendant's convictions.

While the trial court erred in applying enhancement factor (12) to two of the Defendant's convictions, this error does not require a reduction in the sentences imposed by the trial court. See

State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). The trial court properly applied four other enhancement factors in enhancing the Defendant's sentences. The trial court found (1) that the Defendant had a prior history of criminal convictions or behavior in addition to those necessary to establish the range; (2) that he was a leader in the commission of an offense involving two or more criminal actors; (3) that he had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; and (4) that he employed a firearm during the commission of the offense. See Tenn. Code Ann. § 40-35-114 (1), (2), (8), (9). Given the lack of mitigating factors and the four strong enhancement factors, we find no error in the sentence imposed by the trial court for each of the Defendant's convictions.

**Defendant Jeffrey L. Gills**
Defendant Gills also challenges the sentences imposed by the trial court. Defendant Gills contends that the trial court erred by refusing to apply his proposed mitigating factors and improperly applying several enhancing factors. Defendant Gills was convicted of the same crimes as Defendant Huey and faced the same range of punishment for each conviction. He was sentenced to the maximum sentence on each of the four convictions resulting in an effective sentence of 51 years.

The presentence report shows that, at the time of sentencing, the Defendant was a 29 year old male with four children. Defendant Gills had recently earned his G.E.D. while incarcerated. Also, the Defendant possessed an extensive criminal history of seventeen previous convictions, including one felony conviction.

Defendant Gills proposed the same mitigating factors proposed by Huey. In rejecting the mitigating factors proposed, the trial court stated
> [a]ll right, looking at the mitigating factors. Same ones that are cited that were cited by Mr. Hughey [sic] in that strong provocation. There's no strong provocation in this case and there is no substantial grounds existing to justify the conduct. . . . There is a sustained intent to violate the law and I will consider for whatever reason he turned himself in and give it absolutely no weight. Considering all the other factors, I'm finding that none other apply.

We find no error in the trial court's findings.

The trial court also applied to Defendant Gills' sentences the same five enhancement factors based upon the same reasoning that she applied to Mr. Huey. As we have previously discussed with regard to Defendant Huey, the trial court similarly erred in its application of enhancement factor (12) to Defendant Gills' convictions for facilitation of first degree murder and facilitation of attempted first degree murder. However, as with Mr. Huey, we see no need to modify Defendant Gills' sentences because the remaining enhancing factors in the absence of mitigating factors are adequate to support the sentences imposed by the trial court.

**Defendant Ronnie Finch**

Defendant Finch was convicted of facilitation of first degree murder and two counts of facilitation of attempted first degree murder.[1] The Defendant was sentenced as a Range I offender to the maximum sentence for each conviction, an effective sentence of forty-nine years. Defendant Finch argues that the trial court erred in refusing to give any weight to proposed mitigating factors and that the evidence does not support the trial court's finding of enhancement factor (12). Defendant Finch, however, concedes the applicability of the other enhancement factors applied by the court.

The presentence reports shows that, at the time of sentencing, Defendant Finch was a twenty-one year old male with one child. The Defendant did not have a extensive adult criminal history, however, he was found to be delinquent several times in juvenile court.

> In rejecting the Defendant's proposed mitigating factors the trial court stated as follows: Looking at the mitigation, the defendant cited that he played a minor role in the commission of the offense. I do not find that the facts justify that at all. As a matter of fact, he was involved in the altercation earlier in the day and clearly, though there was no one that saw him with a weapon, clearly was there, present, knowing what was happening, whether or not he fired a firearm or not. There is no intent to violate the law. Well, clearly that's not correct. The day before he had gotten into the situation with Mr. Jerome Jones for which he had a gun on 5/5 [sic]. That was the testimony. Then earlier in the day he was involved in the situation and then later. So that's clearly not a mitigating factor. Any any other factor consistent and that would be, I believe, the fact that he has gotten his G.E.D. while he was incarcerated. I will consider that but will give it no weight.
>
> Considering all the other mitigating factors, I do not believe that there is anything sufficient to mitigate any sentence in this case.

The trial court considered all the relevant mitigating factors, and we find no error in its refusal to accord the factors any weight.

The trial court found five enhancement factors in sentencing the Defendant. The trial court found that the Defendant had a previous criminal history in addition to that necessary to establish the appropriate range; the Defendant has displayed an unwillingness to comply with the conditions of a sentence involving release in the community; the Defendant willfully inflicted bodily injury on another or the actions of the Defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim; the felony was committed while the Defendant was on probation from a prior felony; and the Defendant was adjudicated to have committed an act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114 (1), (8), (12), (13), (20).

---

[1] Unlike his codefendants, Defendant Finch was acquitted of the charge of felony reckless endangerment.

As we have found with regard to Defendants Huey and Gills, the trial court erred in applying enhancement factor (12) to Defendant Finch's convictions for facilitation of first degree murder and facilitation of attempted first degree murder. However, the trial court found and the Defendant concedes the presence of four other enhancement factors. Each of these factors are entitled to great weight, and we find no error in the sentence imposed by the trial court.

## CONSECUTIVE SENTENCING

Each Defendant also challenges the trial court's imposition of consecutive sentences. Tennessee Code Annotated section 40-35-115 provides that the trial court may impose consecutive sentences upon a defendant convicted of multiple criminal offenses if it finds that a preponderance of the evidence establishes that the defendant falls into at least one of seven categories. Two of those categories are:

a) the defendant is an offender whose record of criminal activity is extensive; and
b) the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.

Tenn. Code Ann. § 40-35-115 (2), (4).

### Defendant Huey

The trial court ordered Defendant Huey's sentences to run consecutively based upon his extensive criminal history and his status as a dangerous offender. The trial court stated that

[h]e is clearly an offender whose record of criminal activity is extensive. I understand that his convictions are - There's no prior felonies but when you look not only at the nature of the convictions, the frequency, and I counted them, the convictions in his short life, he's had 17 prior convictions. He has just been constantly in this system. I'm going to find that he is, in fact, an offender whose record of criminal activity is extensive and I'm also going to find that he is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. I can't think of a better example than a situation where you open fire with a rifle in a crowded housing area, be it over drugs or somebody disrespecting you or whatever, this is, in fact, the personification of what a dangerous offender is.

Now will the aggregate term reasonably relate to the severity of the offenses, and is it necessary to protect the public from further serious criminal conduct by the defendant? Those questions will be answered positively because this is a case where Mr. Leo White and Mr. Ben White, strangers somewhat to this altercation that had occurred earlier, were gunned down.

The trial court's findings are supported by the record. Therefore, we conclude that the trial judge properly acted within her discretionary authority in imposing consecutive sentences.

**Defendant Gills**

The trial court also ordered Defendant Gills' sentences to be served consecutively due to his extensive criminal history and his status as a dangerous offender. The trial court specifically found that the Defendant exhibited behavior that showed little or no regard for human life and showed no hesitation in committing a crime in which the risk to human life was high. The trial court stated that

> [s]hooting with automatic weapons into a densely populated area involving five or six children clearly is a dangerous offender. He has, and the aggregate term relates to the severity of the offenses. This is a murder case. The jury chose not to convict these defendants of Murder in the First Degree, though the evidence was surely there. And these sentences are necessary in order to protect the public from further serious criminal conduct by this defendant, evidenced by all the prior. He's hardly gone any time without being back in the criminal justice system except for that time which he was incarcerated.

The trial court's findings are clearly supported by the record, and we find no error in the imposition of consecutive sentences.

**Defendant Finch**

The trial court sentenced Defendant Finch to consecutive sentences on the basis that he is a dangerous offender. The trial court specifically found that

> he's a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. He's on probation for a weapons offense at the time this occurs, he has a prior adjudication, as a juvenile, of a robbery conviction. All of this indicates an individual who is dangerous. These offenses are dangerous, and, obviously, the public needs to be protected. In addition to that, he was on probation, which is another factor. He was sentenced for an offense committed while on probation. Therefore, I find that consecutive sentences are necessary with regard to Mr. Finch, also.

Again, the trial court's findings are well-founded. This issue is without merit.

### DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL

Finally, Defendant Finch contends that the trial court erred in taking his motion for judgment of acquittal under advisement. At the end of the State's proof, all three Defendants moved for a judgment of acquittal. The trial court denied Defendants Huey and Gills' motions, but expressed concern regarding the sufficiency of proof regarding Defendant Finch. The State's proof against Defendant Finch consisted of one witness who placed Finch at the scene during the shooting, but stated that he was unarmed. Instead of granting Defendant Finch's motion, the trial court took the motion under advisement.

Our supreme court has clearly stated that "[t]here is no authority in our practice or procedure in a criminal case for the trial judge to take under advisement a motion for a judgment of acquittal made at the conclusion of all the State's proof." Mathis v. State, 590 S.W.2d 449, 453 (Tenn. 1979). At the end of the State's proof, if the evidence is insufficient to support a conviction, upon a defendant's motion, the trial court has no alternative but to direct a verdict in favor of the defendant. Id. It is clear that the trial court erred in taking the Defendant's motion under advisement.

However, the Mathis court also held that

[w]hen the court overrules or does not act upon a motion for an acquittal made at the conclusion of the State's proof, if counsel is convinced as to the validity of the motion, he or she must then and there take affirmative action to confine the controversy to the proof already presented. He or she should announce that the defendant stands on his motion, will present no proof, disclaims any benefit of any evidence introduced by his codefendant, disavows any detriment, and should state that the evidence presented by the codefendant will not be binding upon him, and he should participate no further in the trial until after conclusion of all the proof.

Id. In the present case, the Defendant's counsel did not object to the court's action nor did he stand on his motion. In fact, counsel for Defendant Finch participated in the remainder of the trial by cross-examining a witness called by one of his codefendants. The Defendant's actions have waived the trial court's error.

The strict guidelines as set forth by our supreme court for preserving as error a trial court's denial of or inaction upon a motion for judgment of acquittal leave no room for a plain error analysis. Accordingly, Mathis requires us to find that the Defendant has waived the trial court's error in taking his motion for judgment of acquittal under advisement. This issue is without merit.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE