IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 26, 2006 Session

## WILLIAM JAMES JEKOT v. PENNIE CHRISTINE JEKOT

**Appeal from the Circuit Court for Rutherford County**
**No. 48908     Robert E. Corlew, Judge**

—————————

**No. M2006-00316-COA-R3-CV - Filed on January 3, 2007**

—————————

In this divorce case, the husband appeals the trial court's division of marital property, the amount of the award of rehabilitative alimony to the wife, and the grant of divorce to the wife based on the husband's adultery. The wife argues that she should have been awarded alimony *in futuro* rather than rehabilitative alimony. After review, we find no error in the trial court's division of the marital property and the award of divorce to the wife based on the husband's adultery. However, we do find error in the award of alimony. We find that the wife is not capable of being rehabilitated and that the amount of monthly alimony awarded should be altered. We affirm the judgment as to the marital property and the award of divorce based on the husband's adultery and modify the trial court's judgment to award the wife alimony *in futuro* in the amount of $9,000 per month.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court in which CHARLES D. SUSANO, JR., J., joined. D. MICHAEL SWINEY, J., filed a dissenting opinion.

William Kennerly Burger, Murfreesboro, Tennessee, for the Appellant, William James Jekot.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the Appellee, Pennie Christine Jekot.

### OPINION

### *I. Background*

After nearly 30 years of marriage, Dr. William James Jekot ("Husband") filed for divorce, alleging that he and Pennie Christine Jekot ("Wife") had irreconcilable differences. Wife answered the complaint and counterclaimed for divorce based on allegations of Husband's adultery. At the time the divorce was filed, Husband was fifty-four years of age, Wife was fifty-three years of age, and they had no children. The parties had few assets when they married; however, Husband was an

orthopedic surgeon with a successful practice, and during the course of the marriage, they acquired substantial property. Following a bench trial, the trial court awarded the divorce to Wife on the grounds of adultery and divided the marital assets. Wife received assets totaling $1,468,758, which consisted of the marital residence and its contents, two parcels of real property on Bridge Avenue in Murfreesboro, Tennessee, a Hyundai automobile, a Chrysler van, $411,253 from the parties' Credit Suisse First Boston joint account, her IRA account, and a certificate of deposit in the amount of $13,071. Husband received assets valued at $1,459,116, which consisted of real property on Stonecrest Parkway in Murfreesboro, a 1998 Ferrari 328, a 1973 Jaguar E-Type, a 2002 Lexus RX300, a 1996 Wavelength yacht, $146,854 from the Credit Suisse First Boston account, a First Tennessee checking and savings account, his IRA, his 401(k) account, and all interest in his medical practice. In addition, each party was awarded one-half of the net proceeds from the pending sale of the medical office buildings in Murfreesboro. The order also awarded Wife rehabilitative alimony in the total amount of $540,000, payable over a period of sixty months.

Husband's motion to alter or amend the trial court's judgment was denied, and this appeal by Husband followed.

## II. Issues

Husband raises the following issues on appeal:

1) Whether the trial court erred in its apportionment of marital property.

2) Whether the trial court erred in its award of alimony to Wife.

3) Whether the trial court erred in granting a divorce to Wife based upon Husband's adultery.

By way of a separate issue, Wife contends that the trial court erred in failing to designate her alimony award as one *in futuro*.

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## III. Division of Marital Property

The first issue we address is whether the trial court erred in its apportionment of marital property.

In determining what constitutes an equitable division of marital property, T.C.A. § 36-4-121(c) provides that the court is required to consider "all relevant factors," which include:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

A trial court is allowed wide discretion in dividing marital assets, and its decision in that respect is to be given "great weight" by this Court. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991).

First, Husband argues that the trial court erred in its division of the marital property by failing to properly consider tax consequences and debts associated with some of the marital assets. In its order dividing the parties' marital property, the trial court noted that Husband was being allowed property with a total fair market value of $1,459,116 and that Wife was being allowed property with a total fair market value of $1,468,758.[1] These totals were based upon values that the court assigned to individual marital assets, as set forth in the trial court's memorandum opinion. Husband asserts that for the past several years, he has paid income taxes at the approximate rate of 33%. He argues that the trial court "erred in assessing certain monies awarded the Husband which were based on tax-deferred (pre-tax) amounts, while crediting to the Wife certain accounts upon which the income tax had already been paid," i.e., Husband argues that the values assigned to assets by the trial court did

---

[1] These figures did not include the value of the previously noted medical office buildings because the sale of such properties was still pending at the time of the court's order.

not reflect the true value of such assets, to Husband's detriment. Specifically, Husband contends that the 401(k) account, the First Tennessee business account, the medical practice cash and accounts receivable, and his IRA were all awarded to him at a total pre-tax value of $1,052,206, whereas the net value of these assets after payment of taxes will amount to only $700,769. Husband also argues that the trial court erred in failing to deduct debts associated with his medical practice totaling $210,166 from the value assigned to that asset and that $80,000 in accounts receivable associated with the medical practice have a net value of only $53,280 after taxes.

We do not agree with Husband's conclusion that the trial court failed to consider tax consequences and debts associated with assets awarded in this divorce. It does not follow from the mere fact that the trial court set forth a fair market value for each of the assets in controversy that the trial court failed to consider that those values would be diminished as a result of tax consequences or debts due. In its memorandum opinion, the trial court cited T.C.A. § 36-4-121(c) and thereby stated the factors it considered in dividing the parties' property. Included among these statutory factors was subsection 9 which, as noted above, required that the court consider "[t]he tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset." Further, in its order denying Husband's motion to alter or amend, the trial court stated as follows:

> The Court rejects Dr. Jekot's request that the Court redivide the property in light of the tax considerations detailed in his Rule 59 Motion, upon the Court's reaffirmation that it considered the tax consequences, along with Dr. Jekot's superior ability to acquire capital assets, and other statutory factors, when effecting a division that the Court determined to be equitable. ... .

There is nothing in the record before this Court contradicting the trial court's assertions that it considered tax consequences associated with assets awarded either party in the division of marital property.

The trial court assigned a value of $146,000 to Husband's medical practice. With regard to Husband's complaint that the trial court failed to consider debt and taxes associated with the medical practice, the record shows that in valuing Husband's medical practice, Husband's own expert did not include the $210,166 debt asserted by Husband. Further, Husband's expert explained that the difference between his valuation of Husband's medical practice at $111,000 and Wife's expert's valuation of the same asset at $146,000 was due to the fact that his own valuation was reduced by taxes to be paid. However, Husband's expert admitted that the accepted method of valuing money does not permit the deduction of taxes and is a dollar for dollar valuation and further testified as follows:

> Q. So if you say don't consider the tax consequence, which you concede we should not, we need to add 33,000 to this 111 come up with an accurate value of 144,000, don't we?

A. Yes.

. . .

Q. So you agree with me the correct method of valuing that according to the ordinary business practice is $144,000, right?

A. Correct.

Additionally, we find a deficiency of proof with respect to the tax consequences asserted by Husband. While Husband testified at trial that in recent years he has paid income tax at the rate of approximately 33%, that testimony and copies of his recent tax returns appear to be the only evidence submitted, other than the above noted testimony regarding his medical practice, as to any tax consequences connected with the assets in question. Further, we find no proof that Husband intends to dispose of any of these assets in the near future. Exactly when these assets will be subject to income taxation and the amount of taxes Husband will be required to pay are matters of speculation. As we stated in *Hasty v. Hasty,* No. 01-A-01-9504-CH00176, 1995 WL 567313, at *3 (Tenn. Ct. App. M.S., filed September 27, 1995), "[t]here is no way of knowing what the tax laws will be when and if one of the parties sells a piece of property at some time in the future." And with specific regard to his 401(k) and IRA, Husband apparently does not consider that until these assets are liquidated, they will continue to earn interest and dividends, offsetting to some degree any amounts Husband will be required to pay in taxes.

Husband further argues that the trial court erred because, in dividing the marital property, the court failed to credit Husband with monies distributed to Wife prior to entry of the divorce decree. In this regard, Husband notes that the parties were separated for over two years and remained separated at the time of the divorce. He states that during the period of separation, from July of 2003 until the trial in August of 2005, $306,770 was distributed to Wife from the parties' joint assets. Husband charges that these monies were used for the maintenance and improvement of the parties' residence and for expenses associated with an animal shelter that was constructed during the marriage so that Wife might pursue her interest in caring for and finding placement for homeless dogs. Husband cites T.C.A. § 36-4-121(b)(1)(A) which defines "marital property" to include "any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date." He maintains that this statutory language "would contemplate the post-separation division of any real or personal asset, in anticipation of the final divorce, and where the funds, or other property, are not shown to be a necessary part of the receiving spouse's monthly support needs." Husband contends that after deducting a reasonable amount for support, the balance of the $306,770 distributed to Wife after separation should have been considered by the trial court in reaching an equitable division of the parties' assets, whether as "an advance division of a marital interest," or as a "gift, bequest or other distribution" considered to be her separate property. We disagree.

Husband's argument that the trial court should have construed payments made to Wife before the divorce for operation of the animal shelter and improvements to the residence to be a gift to Wife or an advance division of marital property is negated by the decision of the Supreme Court of this state in *Alford v. Alford*, 120 S.W.3d 810 (Tenn. 2003). In that case, the husband and wife had been separated for more than half of their twenty-year marriage. Upon their divorce, it was ordered that debts incurred by the wife during the period of separation be paid by the husband as marital debt. Although both the Court of Appeals and the Supreme Court agreed that the debts were properly designated marital debts, the Supreme Court rejected the Court of Appeals' reliance upon prior case law which had distinguished between marital debt and separate debt upon the basis of whether the debt was incurred for the parties' joint benefit. Instead, the Supreme Court held that all debt incurred by either or both spouses during the marriage up to the date of the divorce is properly designated marital debt. The Court further stated as follows:

> [T]he debts incurred by Wife in the present case are marital because they were incurred during the course of the marriage. Unless a court has made provisions for the distribution of property in a decree of legal separation, a period of separation before divorce has no effect on the classification of debt as marital or separate. Separated parties are still married. As the trial court in this case stated, "[t]hey cannot be both married and divorced. Courts should not concern themselves with the type of living arrangements chosen by adult parties to the union. ... ."

*Id.* at 813-814.

The evidence in this case does not preponderate in favor of a conclusion that the payments in question constituted anything other than the satisfaction of marital debt from marital assets, and we find no error in the trial court's failure to consider these payments in apportioning the parties' assets.

In concluding with respect to the issue of the propriety of the trial court's division of the parties' marital property, we note the well-settled rule that while there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. *Bookout v. Bookout*, 954 S.W.2d 730 (Tenn. Ct. App. 1997). Decisions as to the division of marital property are dependent on the facts and circumstances peculiar to the case under review. See *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994). Our careful examination of the record convinces us that the trial court's division of the marital assets was rendered after proper consideration of the factors set forth at T.C.A. § 36-4-121(c) and was supported by the evidence presented. The record shows that there is parity between the parties as to some of these factors. For example, the parties are both in their mid-fifties and apparently have no mental or physical health problems. However, as to other of the statutory factors, Wife is relatively disadvantaged - most significantly with respect to present and future economic prospects. In this regard, the trial court stated as follows in its September 2, 2005 memorandum opinion:

Dr. Jekot is a trained orthopedic surgeon and as such is very employable with great earning capacity. Ms. Jekot is well-trained with both bachelor's and a master's degree in business education and education leadership, but she has not utilized her skills in the marketplace in some twenty years, and, is therefore unlikely to find immediate employment without some further training. Even so, Ms. Jekot's ability to contribute to her capital assets and income at this stage in her life is limited while Dr. Jekot has the ability to continue working and earning a substantial income.

While acknowledging that almost all of the marital assets were acquired through the efforts of Husband, the trial court also recognized that Wife aided Husband in achieving his professional goals and current earning capacity, noting her financial support of Husband during his school years and her subsequent efforts in the community which aided him in building his medical practice.

We do not find that the evidence preponderates against any of these findings of the trial court which well support its decision regarding the division of marital property, and Husband's argument to the contrary is without merit.

## *IV. Alimony*

The next issue we address is whether the trial court erred in its award of alimony to Wife. The trial court's order provided that Wife be awarded rehabilitative alimony in the amount of $15,000 per month for the first twelve months following the divorce, $10,000 for the succeeding twenty-four months, and $5,000 for the twenty-four months thereafter for a total alimony award of $540,000 to be paid over a sixty month period.

T.C.A. § 36-5-121(i) provides that, in determining whether payment of spousal support is proper and in determining the proper form and amount of such support, a trial court must consider all relevant factors, including the following:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party; including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

On prior occasion, this Court has noted that, while all of the above factors - to the extent relevant to the facts of a given case - should be considered in determining spousal support, "the two most important factors are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay." *Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998).

As to the form of alimony, the legislature of this State has indicated its preference for rehabilitative alimony when one spouse is found to be economically disadvantaged, as provided at T.C.A. § 36-5-121(d):

(2) It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(3) Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors ... then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

Guided by the above statutes and case law, we respectfully disagree with the trial court's decision that alimony payments to Wife should begin at the rate of $15,000 a month and that Wife should receive rehabilitative alimony rather than alimony *in futuro.*

First, there is no question that an award of alimony was justified given the length of the parties' marriage, the contributions by Wife to the advancement of Husband's career, the substantially inferior earning capacity of Wife, and the affluent lifestyle enjoyed by the parties during their marriage. However, while we agree that Wife is entitled to some amount of alimony based upon these factors, we do not agree that Wife has demonstrated need commensurate with the initial monthly amount of alimony she was awarded, and as we have noted, need and the other spouse's ability to pay are the two most important factors to be considered by the trial court in determining the proper amount of alimony to be awarded.

In support of her request for alimony, Wife prepared and filed a cost of living report which purports to set forth her personal expenses and expenses incurred in maintaining the marital residence for the years 1999 through 2004, as well as a projected estimate of such expenses for the future. While we do not disagree that most of the expenses itemized in Wife's report of projected expenses appear to accurately reflect legitimate needs and therefore, constitute a reasonable basis for calculating the amount of alimony she should receive, some of the expenses listed by Wife are excessive, vague, or otherwise inappropriate. As examples, we note Wife's inclusion of $2,500 per month for "Retirement Savings," $1,250 per month for a savings fund she designated "Usage of Emergency Fund," $2,591 per month for "Home Maintenance Labor and Repairs" on the residence (which she testified is in "sound" condition), and $1,188 per month for "Lawn and Yard Maintenance." Accordingly, we find that the trial court's award of alimony at a beginning rate of $15,000 per month was not warranted.

Second, we also do not agree that an award of rehabilitative alimony was appropriate under the facts of this case. As the trial court remarked in its memorandum opinion of January 31, 2006, Wife has not utilized her career skills in twenty years. It is reasonable to assume that whatever experience she gained those many years ago would be of little or no advantage were she to seek employment today, and it will take some time for Wife to receive the additional education and training necessary to prepare her for a job offering meaningful remuneration. Further, at the time of trial, Wife was fifty-five years of age, and we do not believe it is realistic to expect that she will be able to effectively compete for employment as she nears an age at which many retire.

Based upon our findings that the initial award of alimony of $15,000 per month was not adequately supported by the evidence, that rehabilitation of Wife is not feasible, and that Wife is economically disadvantaged relative to Husband, we modify the trial court's award of rehabilitative alimony to an award of alimony *in futuro* in the amount of $ 9,000 per month. While this amount does not differ from the *average* monthly amount of alimony awarded by the trial court over the sixty months the court allowed for Wife's rehabilitation, it provides that each payment is consistent with Wife's actual monthly needs.

### V. Grounds

The final issue we address is whether the trial court abused its discretion in granting a divorce to Wife based upon Husband's adultery.

Pursuant to T.C.A. § 36-4-129(b), a trial court is given the discretion to grant a divorce to either or both of the parties as follows:

> The court may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Husband argues that the trial court should have simply declared the parties divorced, as it was authorized to do under this statute, and that the court abused its discretion by granting Wife a divorce based upon Husband's adultery. Husband contends that a divorce based upon his adultery was not merited under the circumstances because the parties' marriage had been failing since the 1980s, long before he is alleged to have been unfaithful, and because Wife herself was sexually unfaithful to him in 1990.

In *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001), the Tennessee Supreme Court stated as follows regarding the abuse of discretion standard:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

An abuse of discretion occurs when the lower court's decision is without a basis in law or fact and is, therefore, arbitrary, illogical, or unconscionable. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000).

While the evidence in this case does not contradict Husband's assertions that the parties' marriage had been in jeopardy for several years and that Wife was sexually unfaithful to Husband in 1990, neither of these facts persuades us that the trial court abused its discretion. Husband does not contend, and we do not find, that the trial court applied an incorrect legal standard in reaching its decision - T.C.A. § 36-4-121(3) provides that adultery by either party is a proper ground for divorce, and Tennessee case law provides that adultery remains a ground for divorce even where committed after separation. *Perry v. Perry*, 765 S.W.2d 776, 779 (Tenn. Ct. App. 1988). Nor do we find that the trial court's decision was against logic or reasoning. Husband testified that he had

-10-

been dating another woman for two years prior to the divorce and that he and this woman had engaged in sexual relations with one another since the fall of 2003. The fact that the parties' marriage was deteriorating and the parties were separated does not nullify Husband's infidelity, which it might reasonably be argued, substantially decreased the probability of future reconciliation. Further, we believe that the asserted infidelity of Wife some fifteen years before the divorce was too remote in time to bear meaningful significance at the time of divorce and, applying the principle of condonation, the trial court reasonably found it to be a relatively minor factor in the case. Also, we have previously held that even where there is evidence that both parties engaged in inappropriate marital conduct, a court may grant the divorce upon the fault of just one of the parties upon an implicit finding that that party's fault was greater. *Morrissett v. Morrissett*, No. W2003-01052-COA-R3-CV, 2004 WL 1656479, at *6 (Tenn. Ct. App. M.S., filed July 23, 2004). Accordingly, we do not agree that the trial court abused its discretion by granting Wife a divorce based upon Husband's adultery.

### V. Conclusion

For the above stated reasons, we affirm the judgment of the trial court as modified, and this case is remanded to the trial court for enforcement of that court's judgment, as modified, and for the collection of costs assessed below, all pursuant to applicable law. Costs of appeal are assessed to the appellant, William James Jekot.

_____
SHARON G. LEE,  JUDGE