IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE  v.  DENNIS RAY GILLILAND

**Appeal from the Criminal Court for Dickson County**
**No. CR-2234    Hon. Allen W. Wallace, Judge**

---

**No. M1997-00072-SC-R11-CD  —  Decided June 19, 2000**
**FOR PUBLICATION**

---

We granted appeal in this case to decide the following two issues: (1) whether the trial court abused its discretion in a felony murder prosecution by admitting evidence that the appellant was involved in a prior shooting of two individuals in order to "tell the full story" of the current prosecution; and (2) whether the State's withdrawal of its notice seeking the death penalty was also an implicit withdrawal of the State's notice seeking life imprisonment without parole.  We hold that although the trial court abused its discretion in admitting evidence of the other killings, the error did not affirmatively affect the outcome of the trial.  We also hold that the State's withdrawal of its notice seeking the death penalty is, without more, also a withdrawal of its notice seeking life without parole.  Accordingly, the judgment of the Court of Criminal Appeals is affirmed in part as modified and reversed in part.  The appellant's conviction is sustained, and pursuant to Tennessee Code Annotated section 39-13-208(c), the appellant's sentence is modified to imprisonment for life.

**Tenn. R. App. P. 11 Permission to Appeal; Judgment of the Court of Criminal Appeals Affirmed in Part as Modified, Reversed in Part; Sentence Modified**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA and HOLDER, JJ., joined.  BIRCH, J., dissenting, without opinion.

Guy T. Wilkerson, District Public Defender, Camden, Tennessee, for the appellant, Dennis Ray Gilliland.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Kim R. Helper, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

### OPINION

On the early morning of July 20, 1995, a mail carrier discovered the body of Bobby Bush on the side of a rural road in Houston County.  Examination of the body by a Houston County medical examiner revealed that Bush died as a result of a gunshot wound to the right temple.  Although the

victim was known to be carrying a substantial sum of money the night before, investigators only found a dollar bill and some change in his pockets. Because no blood was found on the ground around the body, investigators believed that Bush was shot elsewhere and that his body was moved to this location.

On September 5, 1995, a Houston County grand jury indicted the appellant, Dennis Gilliland, for the murder of Bush, and it charged the appellant with one count of premeditated first degree murder and with one count of felony murder in the perpetration of a robbery.[1] According to the State's theory of the case, the appellant murdered Bush in an attempt to steal a substantial sum of money that the appellant knew Bush to be carrying. In support of its theory, the State introduced testimony that the appellant, Bobby Bush, and several other people were at the house of a common friend during the night before the discovery of Bush's murder. Several times during this evening, the appellant bragged about being involved approximately three weeks earlier in the shooting of two individuals, known as the Walton brothers. According to the appellant's story, he shot and killed the Walton brothers in self defense with his 20-gauge shotgun after they began shooting at him first.[2]

After hearing the appellant's story, Bush questioned whether the appellant could hit a target from 75 feet away with a 20-gauge shotgun, and he asked the appellant to let him see the shotgun. The appellant brought a shotgun into the house from his truck, and before handing the shotgun to Bush, he broke it down and ejected a single Remington slug. Bush looked at the shotgun and then told the appellant that he would bet "everything in [his] pocket" that he likewise would have "done the same thing under the circumstances." Bush then pulled "a wad" of money out of his pocket containing at least two one-hundred dollar bills and about six or eight other bills. The appellant looked at the money and responded that he was not impressed.

In order to help "paint a picture" of why the appellant was displaying off his shotgun and why Bobby Bush pulled money out of his pocket, the State sought to introduce the fact that the appellant was involved in the shooting death of the Walton brothers. At the pre-trial hearing on the issue,[3] the State argued that unless the full story of the Walton brothers was presented to the jury,

---

[1] A Dickson County grand jury also indicted the appellant on the same two counts during its March 1996 term. On May 13, 1996, the State dismissed the Houston County indictment, and moved its prosecution to Dickson County on the theory that either the murder or the robbery took place in Dickson County. The Court of Criminal Appeals ruled that venue was proper in Dickson County, and the issue of proper venue is not before this Court.

[2] Apparently, the appellant was at a local creek with a friend and his friend's daughter when the Walton brothers pulled up on a bridge over the creek and started firing at everyone in the creek. The appellant and his friend returned fire, killing one or both of the brothers. A grand jury refused to return an indictment against the appellant for this shooting believing it to be justifiable homicide.

[3] The hearing was on the Defendant's Motion in Limine to exclude evidence of the prior shootings.

the jury would be mislead as to why Bush pulled the money out of his pocket or why Bush was talking to the appellant. The State also argued that this evidence was not actually evidence of a prior bad act because the shooting was later determined to be justifiable homicide.

In response, the appellant argued that the story of the Walton shooting was not necessary to establish the fact that the appellant saw Bush's money or that the appellant possessed a 20-gauge shotgun. Because the essential facts that the State needed to prove could be established by other witness testimony, the defense argued, whatever probative value the prior shootings had was substantially outweighed by the danger of unfair prejudice.

After hearing testimony by witnesses and arguments by counsel, the trial judge concluded that evidence of the prior shootings was admissible under Tennessee Rule of Evidence 404(b). The court believed that evidence of the prior shootings was relevant because it "painted the picture" concerning the discussion over the money and because it put the shotgun in the defendant's hands. Further, in balancing the probative value of the evidence against the danger of unfair prejudice, the trial court concluded that although some prejudice certainly existed, the evidence was not unfairly prejudicial.[4]

On August 23, 1996, a jury found the appellant guilty of first degree premeditated murder and of felony murder in the perpetration of a robbery, but upon motion by the defendant, the court dismissed the premeditated murder conviction for lack of proof. On November 20, 1996, the appellant was sentenced to life imprisonment without parole. Although the State previously served notice to the appellant of its intention to seek the death penalty for the crime, it withdrew this notice on June 24, 1996 by way of a letter addressed to the court and copied to the appellant. The State did not file a separate written notice of its intent to seek life imprisonment without parole.

On appeal to the Court of Criminal Appeals, the appellant argued among other things that the trial court erred in admitting evidence of the Walton shooting. A majority of the intermediate court held that the trial court was within its discretion because the evidence "was necessary to explain the complete story of the subject homicide." The majority also concluded that the probative value of the evidence was not outweighed by its prejudicial effect, and that even if the admission of the evidence was error, "it was harmless in light of the other evidence against the defendant." In a concurring opinion, Judge Joseph M. Tipton expressed his view that admission of the Walton shooting was error because evidence of the shootings "was unnecessary for the jury's understanding of the essential nature of the charged offense." Although Judge Tipton concluded that evidence of the shotgun and money could have been established by other testimony, he agreed that the conviction should be affirmed because evidence of the shootings was immaterial to the jury's verdict in light of the other evidence presented.

---

[4] The trial court's rationale is unclear on this point, and the court seems to have concluded that the evidence was not unfairly prejudicial in part because the State's case was based on circumstantial evidence.

The Court of Criminal Appeals also held that the State's withdrawal of its notice seeking the death penalty was not an implied withdrawal of its intention to seek life without parole. Nevertheless, the court remanded the case for re-sentencing by a jury because the trial judge improperly considered the "personality" of the appellant when sentencing the appellant to life without parole.

We granted permission to appeal to decide whether the trial court erred in allowing evidence of the prior shootings in order to explain the whole story of the murder in this case. We hold that although evidence of prior acts may be admitted under some circumstances in order to provide contextual background, the trial court abused its discretion in admitting the evidence in this case. We agree, however, with the holding of the intermediate court that the error was harmless in light of the other evidence presented. We further hold that the State's withdrawal of its notice seeking the death penalty also operated as an implicit withdrawal of its intention to seek life without parole and that the appellant's sentence should be modified accordingly.

## STANDARD OF APPELLATE REVIEW

When reviewing a trial court's decision to admit evidence based upon its evidentiary relevance, we will not reverse that decision unless the trial court has abused its discretion. See State v. DuBose, 953 S.W.2d 649, 652-53 (Tenn. 1997); Dockery v. Board of Professional Responsibility, 937 S.W.2d 863, 866 (Tenn. 1996). Likewise, when the proffered evidence is subject to the procedural requirements of Tennessee Rule of Evidence 404(b) and when the trial court has substantially complied with those requirements, then any decision as to whether to admit evidence under Rule 404(b) will only be reversed for an abuse of discretion. DuBose, 953 S.W.2d at 652. Because the term "discretion" essentially "denotes the absence of a hard and fast rule," we will reverse a decision to admit evidence "only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (citing State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

## ADMISSION OF PRIOR SHOOTINGS

As both parties concede in their arguments before this Court, the appellant's involvement in a prior shooting is an act reflecting on the appellant's character, and its admissibility is therefore governed by Tennessee Rule of Evidence 404(b). Rule 404(b) reads as follows:

Other Crimes, Wrongs, or Acts. — Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1)	The court upon request must hold a hearing outside the jury's presence;

-4-

(2)      The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3)      The court must exclude the evidence if the probative value is outweighed by the danger of unfair prejudice.

As the language of the Rule indicates, evidence of other acts is admissible so long as that evidence is (1) offered to establish something other than action in conformity with a particular character trait, (2) relevant to a material issue at trial, and (3) such that its probative value is not outweighed by the danger of unfair prejudice.

Unlike Federal Rule of Evidence 404(b) which generally bars evidence of other crimes, wrongs, or acts, the corresponding Rule in Tennessee does not specifically enumerate the purposes for which such evidence may be offered.[5]  The issues to which evidence of other acts may be relevant were not listed by the Advisory Commission so that lawyers and judges would "use care in identifying the issues to be addressed by the Rule 404(b) evidence."  Neil P. Cohen, et al., Tennessee Law of Evidence § 404.6, at 169 n.457 (3d ed. 1995).  Therefore, in every case in which evidence of other crimes, wrongs, or acts is offered, the trial judge should carefully scrutinize the relevance of the evidence and the reasons for which it is being offered.

In this case, evidence of the appellant's prior shooting of the Walton brothers was offered by the State to "paint a picture" of the events leading up to and surrounding the murder of Bobby Bush.  Although this reason is not one of the reasons frequently given for proffering evidence of other acts,[6] evidence offered to show contextual background need not be excluded simply for the reason that it involves evidence of prior acts. If the contextual evidence is relevant to an issue other than criminal propensity and its probative value is not outweighed by the danger of unfair prejudice, then that evidence may be properly admissible.

Rule of Evidence 401 provides the general standard by which to determine whether proffered evidence is "relevant."  Rule 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

---

[5] Federal Rule of Evidence 404(b) states that evidence of other crimes, wrongs, or acts may "be offered to for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

[6] The typical reasons for admission cited by this Court are the "motive of the defendant, intent of the defendant, the identity of the defendant, the absence of mistake or accident if that is a defense, and, rarely, the existence of a larger continuing plan, scheme, or conspiracy of which the crime on trial is a part." See, e.g., Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980).  In Tennessee Law of Evidence, the authors state that "completion of the story" may also be relevant basis for admission under Rule 404(b).  Cohen, et al., supra, § 404.6, at 169.

probable than it would be without the evidence." See also State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978) (approving of same standard prior to the adoption of the Tennessee Rules of Evidence). Although this standard provides a relatively lenient threshold for admitting evidence, see Tenn. R. Evid. 401 Advisory Commission Comments, general background evidence used to relate the full story of the offense is rarely probative of an actual material issue at trial. Consequently, background evidence used to show the context of events may not always pass even this low threshold of admission when strictly subjected to the requirements of Rule 401.

Nevertheless, as the Rules of Evidence recognize, a strict application of the Rules may work unnecessary hardship in some cases, and the Rules should be flexibly construed to achieve "a just, speedy, and inexpensive determination of the proceedings." See Tenn. R. Evid. 102; see also Cohen, et al., supra, § 102.1 at 4. A general policy that bars background evidence merely because it does not directly bear upon a material issue ignores the fact that such evidence is often crucial to understanding the other material evidence at trial, and the absence of background evidence could have detrimental effects on the jury's comprehension of the offense in question. Events do not occur in a vacuum, and in many cases, knowledge of the events surrounding the commission of the crime may be necessary for the jury to "realistically evaluate the evidence." See Albrecht v. State, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972).

This is not to say, however, that background evidence is always admissible or even appropriate, especially when the evidence would not serve to substantially assist the jury in its understanding of the issues or place the material evidence in its proper context. Further, background evidence may be particularly inappropriate when it consists of other crimes, wrongs, or acts that are not part of the same criminal transaction. A careful balance must be maintained so as not to allow background evidence to rupture the general prohibition against evidence offered only to show criminal propensity.

This balance is partially achieved in Tennessee by the additional requirement in Rule 404(b)(3) that evidence of other crimes, wrongs, or acts must be excluded "if the unfair prejudice outweighs the probative value or is dangerously close to tipping the scales." See State v. Fleece, 925 S.W.2d 558, 561 (Tenn. Crim. App. 1995); State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1993).[7] Nevertheless, this balance is not completely achieved, because there is no uniform standard in this state by which to determine, in the first instance, when background evidence involving other crimes, wrongs, or acts may be offered "for other purposes" under Rule 404(b). Although such a standard should be narrowly drawn to avoid the negative implications associated with criminal propensity evidence, the standard should not be so narrow as to sacrifice the jury's understanding

---

[7] This balancing test for evidence of other crimes, wrongs, or acts is more stringent than the general balancing test for relevant evidence in Rule 403, which requires that relevant evidence is admissible unless its "probative value is *substantially outweighed by* the danger of unfair prejudice . . . ." See Tenn. R. Evid. 401 (emphasis added). Neither the Federal Rules of Evidence, nor the Uniform Rules of Evidence, require a separate balancing test for admission of other crimes, wrongs, or acts. See Fed. R. Evid. 403(b); Unif. R. Evid. 403(b) (1974 and 1986 amends.).

of the necessary context of the case.  Accordingly, we hold that contextual background evidence, which contains proof of other crimes, wrongs, or acts,  may be offered as an "other purpose" under Rule 404(b) when exclusion of that evidence would create a chronological or conceptual void in the presentation of the case and that void would likely result in significant jury confusion concerning the material issues or evidence in the case.[8]

To clarify this holding in terms of Rule 404(b), when the state seeks to offer evidence of other crimes, wrongs, or acts that is relevant only to provide a contextual background for the case, the state must establish, and the trial court must find, that (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Applying this standard to the facts of this case, we conclude that the trial court did abuse its discretion in allowing the State to introduce evidence of the appellant's involvement in a prior shooting.  From our independent reading of the trial transcript, the absence of the Walton brothers shooting would not have created a chronological or conceptual void in the State's theory of the case. According to the State's theory of the case, the story of the Walton shooting was necessary to show (1) why the appellant was displaying his shotgun, and (2) why Bobby Bush was showing off his money.

First, we disagree that the absence of the Walton shooting would have created a conceptual void as to whether the appellant possessed a loaded 20-gauge shotgun; testimony from the State's witnesses could have easily supplied this information to the jury.  Second, we also disagree that the absence of the Walton shooting would have created a conceptual void as to why the victim was flashing his money.  The appellant's *knowledge* of the victim's money was the key fact necessary to the State's case, because according to the State, it was at that point that the appellant formed the intent to rob the victim.  The specific reason that Bush flashed the money is so inconsequential to the State's theory as to be all but trivial.  Further, when viewed in light of all the other evidence presented in the five-day trial, it is exceedingly unlikely that any conceptual void created by the absence of the Walton shooting would have significantly impaired the jury's understanding of the material issues or evidence.

Because the absence of the Walton shooting would not likely have created a conceptual void that would have significantly impaired the jury's understanding of the case, we conclude that the

---

[8] Other jurisdictions have used a similar standard to determine when background evidence is necessary and relevant to an understanding of the material issues in the case, although this test is typically used in cases where the evidence of the other offense is part of the same criminal transaction as the crime charged.  See Pope v. State, 632 A.2d 73, 76 (Del. 1993); see also United States v. Neeley, 189 F.3d 670, 682 (7th Cir. 1999); People v. Starr, 577 N.W.2d 673, 678 (Mich. 1998).

evidence had so very little relevance that its probative value was greatly exceeded by the danger of unfair prejudice. We certainly agree that multiple limiting instructions to the jury from the trial court worked to alleviate the prejudicial effect of the evidence, and we also presume that juries follow the instructions given to them by the trial court. See, e.g., State v. Johnson, 762 S.W.2d 110, 116 (Tenn. 1988). Nevertheless, the fact that the appellant was involved in two other shootings with the same weapon only three weeks earlier, even if found to be justifiable, was still significantly prejudicial, and when weighed in the balance of Rule 404(b)(3), we find nothing in the probative value of the evidence that would tend to tilt the scales in favor of admitting the evidence.

An abuse of discretion standard contemplates that a trial court's ruling will be upheld so long as reasonable minds can disagree as to propriety of the decision made. See Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). Although a decision made under this standard will not be lightly reversed on appeal, the discretion of the trial court is not without limits. The evidence of the Walton shooting in this case was not only without sufficient evidentiary relevance, but the danger of unfair prejudice far outweighed the modicum of probative value possessed by the evidence. Accordingly, we hold that the trial court abused its discretion in allowing the jury to hear the disputed evidence.

## HARMLESS ERROR ANALYSIS

Although the Constitution of our state and of the United States guarantees criminal defendants the right to a fair trial, neither guarantees criminal defendants the right to a perfect trial. See, e.g., State v. Smith, 755 S.W.2d 757, 765 (Tenn. 1988). No judgment of conviction, therefore, will be reversed unless the errors complained of "affirmatively appear to have affected the result of the trial on its merits." See Tenn. R. Crim. P. 52(a); see also State v. Neal, 810 S.W.2d 131, 139 (Tenn. 1991) (stating that "in a criminal case non-constitutional error must be shown by the defendant to have probably affected the judgment before reversal is appropriate") As we have stated many times before, "[t]he line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict beyond a reasonable doubt." See, e.g., State v. Carter, 714 S.W.2d 241, 248 (Tenn. 1986) (citing Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979)). Accordingly, when looking to the effect of an error on the trial, we will evaluate that error in light of all of the other proof introduced at trial. The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits. Cf. Shirley, 6 S.W.3d at 250-51 (finding that error probably affected the outcome of trial when proof barely exceeded that necessary for conviction).

Although the State's case against the appellant was primarily grounded in circumstantial evidence, a careful review of the entire transcript clearly establishes that the evidence was more than sufficient to support a verdict of guilt beyond a reasonable doubt. According to the State's theory, the appellant murdered Bobby Bush in order to steal the substantial sum of money that Bush was known to be carrying. To this end, the State presented evidence showing that although the appellant had only about fifteen or twenty dollars earlier in the evening prior to Bush's murder, the appellant was somehow able to spend over $100 in cash after 3:00 a.m. on July 20, 1995. The State also

showed that while Bush was carrying over four-hundred dollars on July 19, he only had a small amount of change in his pockets when his body was found the next day. Further, the State established that the appellant lied about his whereabouts during the early morning of July 20,[9] and one witness who saw him during this time testified that the appellant had a "pretty good wad of bills" in his wallet. Blood consistent with that of the victim was also found in the appellant's truck,[10] and although the appellant and the victim were not together earlier in the evening, paint from the appellant's truck was found on the rear bumper of the Bush's truck.[11] Last, the State showed that the victim was shot in the head with a 20-gauge shotgun at point-blank range by the same type of Remington slugs possessed by the appellant.[12]

Although the State was only able to introduce circumstantial evidence of the appellant's guilt, we conclude that the evidence is overwhelmingly consistent with the guilt of the accused, that it is inconsistent with his innocence, and that it excludes every other reasonable theory or hypothesis except that of guilt. See State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985). In short, "when all of the facts and circumstances are put together, they may unerringly point the finger of

---

[9] Before he left his friend's house on the early morning of July 20, the appellant stated that he was going to follow Bush to make sure that he got home safely. The appellant later stated that he did not follow Bush home, but instead went to the old Lock B bottoms eight miles north of Cheatham Dam, which is near Ashland City. Although the appellant stated that he was at the lock until daylight, he later stated that he saw no boat traffic on the river.

To rebut the veracity of these statements, the State offered witnesses who saw and talked with the appellant during the time he said that he was at the locks. Further, the State introduced evidence that one tug boat and eleven barges cleared the Cheatham Dam lock around 1:00 a.m. on July 20 heading toward old Lock B, with the inference being that the appellant should have seen at least some river traffic.

[10] Blood was found in the passenger seat and on the top of the passenger side cushion in the appellant's truck. An expert for the State testified that the DNA profile of this blood was consistent with that of Bobby Bush, and that only one person in 286,000 would have a consistent profile.

[11] The State offered this evidence to show that contrary to the appellant's statements, the appellant and the victim were together at some point after 3:00 a.m. on July 20. According to the testimony developed by the State, the victim and his truck apparently got stuck in a local cemetery during the early morning of July 20, 1995. Because tire marks in the cemetery showed that a larger truck pulled a smaller truck out of the cemetery, the State hypothesized that the appellant used his truck to pull Bush's out of the cemetery, which is why paint on the rear bumper of Bush's truck matched the color and consistency of the paint on the tailgate of the appellant's truck. Investigators established that Bush's truck was in the cemetery because they found in the cemetery a broken blinker from Bush's truck, Bush's cigarette lighter, and a pack of cigarettes the victim was known to have smoked.

[12] Police investigators seized two boxes of the exact same type of Remington slugs later from the appellant's truck.

guilt to the defendant to the exclusion of all others beyond a reasonable doubt." Hicks v. State, 490 S.W.2d 174, 178 (Tenn. Crim. App. 1972). In light of the overwhelming evidence of guilt, therefore, we conclude that the error in admitting evidence of the appellant's role in shooting the Walton brothers did not affirmatively affect the outcome of the trial on its merits. Accordingly, the appellant's conviction for felony murder must be sustained.

## EFFECT OF WITHDRAWING NOTICE OF INTENTION TO SEEK
## THE DEATH PENALTY

On March 25, 1996, shortly after the appellant's indictment by the Dickson County Grand Jury, the State filed a formal notice of its intention to seek the death penalty. Three months later on June 24, 1996, though, the State notified the appellant by a copy of a letter sent to the trial court that it was "electing not to pursue the death penalty." After the appellant's trial and conviction for felony murder, the State reaffirmed its intention to seek life imprisonment without the possibility of parole at the sentencing phase of trial. The appellant objected and argued that the State's withdrawal of its intention to seek the death penalty also constituted an implicit withdrawal of its intention to seek life without parole. Although the trial court disagreed, it granted a three-month continuance for the appellant to prepare for sentencing, and at the sentencing hearing, the trial court sentenced the appellant to life imprisonment without the possibility of parole. Before this Court, the appellant argues that his sentence was improper and contrary to the statutory notice provisions of the criminal code.

The issue of whether a withdrawal of an intention seeking the death penalty is also a simultaneous withdrawal of an intention to seek life without parole is an issue of first impression in this state. This issue must be resolved with reference to the notice statutes, and in interpreting these statutes, we should bear in mind that "the fundamental role of this Court in construing statutes is to ascertain and give effect to legislative intent." State v. Mixon, 983 S.W.2d 661, 669 (Tenn. 1999). In ascertaining the intent of the legislature, this Court may look to "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." State v. Lewis, 958 S.W.2d 736, 739 (Tenn. 1997).

Tennessee Rule of Criminal Procedure 12.3(b) provides that in all cases in which the State intends to seek the death penalty, "written notice thereof shall be filed no less than thirty (30) days prior to trial." In Tennessee, capital defendants are also on notice that the state's intention to seek the death penalty "shall constitute notice that the state also intends to seek as a possible punishment a sentence of imprisonment for life without the possibility of parole." Tenn. Code Ann. § 39-13-208(a) (1997). When the state does not intend to seek the death penalty in a capital case, section 39-13-208(b) further requires that the state give pre-trial written notice of its intention to seek life without the possibility of parole when this penalty is sought. A failure to give timely notice results in a "reasonable continuance of the trial" upon motion of the defendant, id., whereas a complete failure to give this notice results in the defendant being sentenced to life imprisonment upon the defendant's conviction of first degree murder. See Tenn. Code Ann. § 39-13-208(c).

The State argues in this case that the withdrawal of its intention to seek the death penalty "simply cannot be read to include a withdrawal of the notice to seek life without parole." Rather than operating as an implicit withdrawal of an intent to seek any greater punishment, the State argues, the "letter merely announced [nothing more than] an intent not to seek the ultimate punishment of death." We cannot agree.

When the state seeks the punishment of life without parole, the notice statutes are clear that written notice of this intention must first be given to the defendant. Section 39-13-208(a) partially relieves this burden by allowing a notice of intention to seek the death penalty to simultaneously serve as a notice of intention to seek life without parole. When the state chooses not to seek the death penalty, however, the statutes are clear that a separate notice of its intention to seek life without parole must be given before the state may seek that punishment.

Logic dictates that when a single writing serves as notice of two separate intentions, *i.e.*, an intention to seek death and an intention to seek life without parole, then a withdrawal of that single writing must also serve as a withdrawal of both intentions. To conclude otherwise, especially when the General Assembly has specifically required separate notice of the possibility of life imprisonment when death is not sought, defeats the very purposes of the notice requirements. If the State in this case desired to seek life without parole even after withdrawing its original notice, it could have easily filed a separate written notice to this effect with the trial court, or at least given some indication of this fact in the letter withdrawing its original notice.

The State also argues that the failure to provide actual notice of its intent to seek life without parole should be excused because no prejudice was suffered by the appellant. Without ruling on the merits of this argument, we note that the statute itself does not excuse a failure to notify when no prejudice inures to the defendant. Rather, the statute is clear and unambiguous as to the procedures to be followed when state does not give notice: "If notice is not filed pursuant to subsection (a) or (b), the defendant shall be sentenced to imprisonment for life by the court if the defendant is found guilty of murder in the first degree." Tenn. Code Ann. § 39-13-208(c). When the language of a statute is clear and unambiguous, we are not at liberty to depart from the commands of the plain language. See, e.g., Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997). Accordingly, we decline to hold that a lack of actual prejudice excuses a failure to give notice.

In addition, the State's arguments concerning lack of actual prejudice ignores the fact that the decision by the state to seek death or life without parole can have significant intangible effects on the defendant's case. For example, the state's decision may influence a defendant's decision to enter plea negotiations, and it will often affect decisions regarding the evidence offered or withheld by the defendant. In addition, the state's decision will require the gathering and marshaling of evidence relevant to aggravation and mitigation of sentence, which in turn may require the services of investigators and expert witnesses. Indeed, because of the importance of these intangible considerations, the state is always required to give notice *before* trial. See Tenn. Code Ann. § 39-13-208(b).

Accordingly, we hold that the State's withdrawal of its original notice of its intention to seek the death penalty, without more, also operated to withdrawal notice of its intention to seek life without parole. In the interests of judicial economy, we modify the appellant's sentence in accordance with Tennessee Code Annotated section 39-13-208(c) to imprisonment for life.

## CONCLUSION

To summarize, we hold that the trial court abused its discretion in admitting evidence of the appellant's involvement in a prior shooting over an objection made pursuant to Tennessee Rule of Evidence 404(b). The evidence of the prior shooting possessed only a modicum of probative value as contextual background evidence, and this slight value was clearly outweighed by the danger of unfair prejudice. This error, though, does not affirmatively appear to have affected the outcome of the trial on its merits, particularly when viewed in the context of the tremendous circumstantial evidence of guilt. We further hold that the State's withdrawal of its intention to seek the death penalty, without more, also operated as a withdrawal of its intention to seek life imprisonment. Accordingly, the Court of Criminal Appeals is affirmed in part as modified and reversed in part, and the appellant's sentence is modified to life imprisonment.

Costs of this appeal shall be paid by the appellee, the State of Tennessee.