# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 20, 2008

## STATE OF TENNESSEE v. BYRON LEBRON ROSHELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-577     Cheryl Blackburn, Judge**

---

**No. M2007-02358-CCA-R3-CD - Filed April 2, 2009**

---

Defendant-Appellant, Byron Lebron Roshell, appeals his conviction by a Davidson County jury of the sale of less than .5 grams of cocaine, a Class C felony. See T.C.A. § 39-17-417 (2006). He argues that (1) the trial court erred in admitting a former co-defendant's testimony that he had bought drugs from Roshell in the past and (2) the evidence was insufficient to support his conviction. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. JOSEPH M. TIPTON, P.J., filed a dissenting opinion.

James P. McNamara and Jeffrey A. DeVasher (on appeal), and Kevin McGee (at trial), Nashville, Tennessee, for the appellant, Byron Lebron Roshell.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Matthew Pietsch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 6, 2006, Roshell was arrested in a "buy-bust" drug operation conducted by the Metropolitan Nashville Police Department. On July 18, 2007, a jury found Roshell guilty of the sale of less than .5 grams of cocaine. On September 12, 2007, the trial court sentenced Roshell to nine years as a Range II, multiple offender. On October 12, 2007, Roshell filed his timely notice of appeal.

**Trial.** Because Roshell challenges the sufficiency of the evidence supporting his conviction, a brief summary of the five witnesses called by the State at trial is necessary. The defense did not offer any proof at trial.

The first witness at trial, Detective Michael Fisher, testified that he was assigned to the East Crime Suppression Unit, "a street level vice unit," that "address[es] the street level narcotics, prostitution, and gambling . . . ." He explained that a "buy bust" operation "target[s] street level drug dealers" in areas known to have a large number of drug sales. Generally, the vice unit uses either an undercover officer or a confidential informant to buy the drugs. Detective Fisher described how the vice unit prepared for a typical "buy-bust" operation:

> Prior to hitting the street [to conduct the operation] we'll wire the [officer or confidential informant] that's going to do the buy with an audio-listening device so we can monitor their conversations on the street, which is chiefly for safety purposes. If something were to go wrong, we could hear the conversation like if they were getting robbed. Then we take [the] money and photocopy it. That's the money that will be used to purchase narcotics so that when an exchange goes down for narcotics and the buyer gives the money over to the seller, when we move in to take the parties involved into custody, we can trace who received the money for the narcotic sale. So that's where the previously photocopied buy money comes into play.

In this case, the vice unit used a confidential informant who was paid to purchase drugs. The audio from the confidential informant's microphone was not recorded due to the difficulty in "the logistics" and the police department policy not to record audio for small scale drug sales.

Detective Fisher photocopied the buy money for the sale, put the wire on the confidential informant, and searched the confidential informant to confirm that he did not possess any other money or contraband before sending him out to make the drug purchase. He searched the informant's waistband, where the wire was placed, and "all the pockets, around the ankle of the sock, not inside the shoe, any pockets in the shirt, upper body, [and the] torso . . . ." Detective Fisher did not strip search the informant, but did remove his shirt to place the wire.

Detective Fisher only observed parts of the "buy-bust" operation and did not witness the actual drug exchange between the informant and Roshell. Detective Fisher dropped the confidential informant off in the designated area and visually monitored the confidential informant until one of the other detectives knew the informant's position. He said that the detectives in the operation took turns observing the confidential informant and that they had four audio transmitters between six detectives. Once the confidential informant purchased the drugs, Detective Fisher said that he "went through the motions" of arresting him to "throw off the other parties involved." When he took the confidential informant into custody, he "retrieved the purchased amount of crack cocaine, which was approximately point two grams, which is [the] average for a twenty dollar transaction." Detective Fisher field tested the drugs and then gave the drugs to Detective Morton.

On cross-examination, Detective Fisher admitted neither the twenty dollar bill that he gave to the confidential informant nor the photocopy of the buy money was preserved as evidence. The confidential informant was paid approximately $40 per drug buy and had received approximately $2000 for nearly thirty successful drug buys between May of 2006 and December of 2006. The

informant was compensated according to a pay scale based on the amount of drugs recovered and did not get paid for failed attempts at drug buys. Finally, the confidential informant in this case completed five drug buys the day Roshell was arrested.

Detective Fisher stated that the confidential informant who assisted in Roshell's case was arrested for possession of drug paraphernalia on January 3, 2007, less than a month after the confidential informant assisted in Roshell's arrest, but a member of the vice squad helped the informant get this charge expunged in April of 2007. Detective Fisher stated that the vice unit decided not to use this particular individual as a confidential informant for a while after they learned that he had relapsed.

The confidential informant in this case testified that he assisted in the "buy-bust" operation conducted by the police on December 6, 2006, that resulted in Roshell's arrest. He walked down Shelby Avenue and encountered Pierre Martin, an old acquaintance with whom he had previously used drugs. He asked Martin where he could buy some "dope," meaning crack cocaine, and Martin said he knew who to call. Martin borrowed the confidential informant's cell phone and called Roshell for the drugs. The confidential informant said that he and Martin met Roshell at a convenience store at South Sixth Street and Shelby Avenue. The confidential informant agreed to split the cocaine with Martin since he told the informant where to find it. As the informant and Martin headed to the store to meet Roshell, they had a discussion about who was actually going to buy the drugs. The informant had initially given Martin the twenty dollar bill supplied by the police, but he convinced Martin to allow him to buy the drugs, and Martin handed the money back to him prior to the sale. When Roshell arrived, he asked who had the money, and the confidential informant gave him the twenty dollar bill. Roshell then gave him the drugs from his pocket. Roshell began to walk away when the police "swarmed in on [them]." After Roshell was arrested, the informant gave the cocaine to Detective Fisher. The confidential informant identified Roshell in the courtroom as the individual who sold him the drugs. Although the informant was paid to buy drugs in these "buy-bust" operations, he was not paid to testify. The confidential informant said that this was his first time to testify for the State.

The confidential informant admitted that he had to be convincing to drug dealers during the "buy-bust" operations, or he would not get paid by the police. If additional drugs or weapons were found on the drug dealer or if the arrest led to more people being arrested, then he would be paid more money. He confirmed that he was paid $40 for the operation involving Roshell, and that he had been involved in five "buy-bust" operations the day that Roshell was arrested. He admitted to the January 3, 2007 arrest for possessing drug paraphernalia and to using crack cocaine at that time. The confidential informant said that he asked the vice unit if he could "work it off," and his paraphernalia charge was retired. He also admitted that he falsified a temporary license tag in 1997.

Pierre Martin, Roshell's former co-defendant, testified that he had been in jail on this case for the last seven and a half months. He pled guilty the day of his testimony in Roshell's trial to facilitation of the sale of under .5 grams of cocaine and received a sentence of four years' probation. Martin did not receive his offer of probation from the State until after the jury had been chosen in

his and Roshell's joint trial. Martin acknowledged that he had multiple felony convictions of theft and burglary as well as misdemeanor convictions of theft. He also admitted that he had a drug problem, although he had never been convicted of selling drugs. Martin said that he knew Roshell "from the street, and . . . from doing time with him," and he knew the confidential informant because they grew up together and used drugs together. Martin's testimony largely corroborated that of the confidential informant's. In addition, Martin knew Roshell was "in the business of selling drugs" because he had "dealt with him before."

Detective Darryl Morton, a member of the East Crime Suppression Unit of the Metropolitan Nashville Police Department, testified that he was also involved in the "buy-bust" operation on December 6, 2006, that resulted in Roshell's arrest. Detective Morton stated that he observed the confidential informant greet Martin and could tell from what he heard on the wire that they knew each other. Detective Morton also heard Martin tell the confidential informant that he did not have any drugs but that he knew where they could get some. He then observed Martin borrow the informant's cell phone. Detective Morton said that he heard Martin tell the informant that they had to walk to the store at Sixth Street and Shelby Avenue. He observed them walking towards the store, but he lost sight of the confidential informant and Martin for a few seconds when he had to drive around the block so that he could observe them at the store. He saw the informant and Martin talking and then saw Roshell come from around the store from the direction of the James Cayce projects. Detective Morton identified Roshell in the courtroom.

Detective Morton stated that Roshell turned to the confidential informant and said, "[H]ere it is." Then Roshell turned at an angle where he could not see Roshell's and the confidential informant's hands touch. Detective Morton then observed the informant giving the take-down signal and watched Roshell walk into the store. As the other officers were arresting Martin and the confidential informant, Detective Morton said he followed Roshell into the store, where he had already purchased a bottle of water with the twenty dollar bill he received from the drug transaction. He arrested Roshell and recovered the twenty dollar bill from the cashier. Detective Morton said he compared the serial numbers on the bill to the photocopy of the twenty dollar bill that was given to the confidential informant, and they matched. He then recovered the cocaine involved in the operation from Detective Fisher and field tested it. Detective Morton stated that the substance tested positive for cocaine at the scene and that he then turned it into the property room and filled out a lab sheet so that the substance could be sent to the Tennessee Bureau of Investigation for testing.

Detective Morton acknowledged that a general order of the police department regarding confidential informants required officers to have "continued surveillance of the [confidential informant] to[,] from[,] and during the transaction or meeting." He admitted that he violated this general order when he lost sight of the confidential informant and Martin while he drove to the store to witness the drug sale. He said that when they searched Roshell they did not find a large sum of money, a cell phone, digital scales, other drugs, or weapons. The vice unit did not photograph or video-tape the transaction, and they did not record the audio from the wire. Detective Morton also did not attempt to obtain the video surveillance tapes from the store where the transaction took place. Finally, Detective Morton failed to preserve the buy money used in this transaction as well as to

-4-

subpoena the confidential informant's cell phone records to prove that Martin called Roshell's number on December 6.

Brian Angolia, a drug chemist with the Tennessee Bureau of Investigation, was admitted as an expert in the field of forensic chemistry and confirmed that the evidence submitted in this case contained cocaine base and weighed .2 grams.

Roshell did not testify, and the defense did not offer any proof at trial.

**I. Tennessee Rule of Evidence 404(b).** Roshell argues that the trial court erred by admitting evidence under Rule 404(b) without making a clear and convincing determination, by admitting the evidence that did not meet the test for contextual background evidence, and by giving jury instructions that were inconsistent to its Rule 404(b) ruling and that heightened the risk that the jury would misuse the evidence of Roshell's prior drug sales. In response, the State argues that the trial court substantially complied with the requirements of Rule 404(b). In addition, the State contends that the trial court cured any alleged deficiency regarding the procedural requirements of Rule 404(b) during the motion for a new trial when it acknowledged that it should have considered the level of proof associated with the prior bad act and concluded that it had found clear and convincing proof that Roshell sold drugs to Martin in the past.

Rule 404(b) states:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Assuming a trial court substantially complies with the requirements of Rule 404(b), we will review the trial court's determination for an abuse of discretion. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). However, if a trial court fails to substantially comply with the requirements of the rule, then the trial court's decision is not entitled to deference by the reviewing court. DuBose, 953 S.W.2d at 652.

"Rule 404 was patterned in great measure on State v. Parton, 694 S.W.2d 299 (Tenn. 1985), wherein our supreme court ruled that evidence of other crimes is generally inadmissible." State v. McCary, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003). Rule 404 "establish[es] that character evidence cannot be used to prove that a person has a propensity to commit a crime." Tenn. R. Evid. 404(b); State v. Adkisson, 899 S.W.2d 626, 645 (Tenn. Crim. App. 1994). Trial courts should take a "restrictive approach [to] 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[8][e] (4th ed. 2000). The more similar the conduct or act to the crime for which the defendant is on trial, the greater the potential for a prejudicial result. McCary, 119 S.W.3d at 243 (citing State v. Bordis, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995)). Other crimes, wrongs or acts are admissible under Rule 404(b) when relevant to an issue other than the defendant's character, such as intent, motive, identity, common scheme or plan, or absence of mistake. Id.

Prior to trial, Roshell's attorney requested an instruction for the casual exchange of drugs under Tennessee Code Annotated section 39-17-418 (2006), which states that a casual exchange of a controlled substance obtained without a valid prescription is a Class A misdemeanor. During Martin's testimony, the State indicated to the trial court that it wanted to ask Martin whether he had bought drugs from Roshell on previous occasions to refute the defense's argument that the transaction was nothing more than a casual exchange. The trial court conducted a hearing outside the presence of the jury to determine the admissibility of Roshell's prior drug sales under Rule 404(b) of the Tennessee Rules of Evidence.

During this jury-out hearing pursuant to Rule 404(b), Martin testified that he knew to contact Roshell because he had purchased drugs from Roshell in the past. Martin acknowledged that Roshell was "in the business of selling drugs" and that Martin had bought drugs from Roshell at least a dozen times. During cross-examination by defense counsel, Martin said, "I can't give you dates and times. . . . I've dealt with Roshell quite a bit." Martin stated that most of the times that he bought drugs from Roshell, there were no witnesses.

When the trial court asked the State why it wanted to admit evidence that Martin had bought drugs from Roshell many times in the past, the following exchange occurred:

THE STATE: The reason [we are asking for this evidence to be admitted] is because the defense is asking for an instruction on casual exchange. And one of the things that I have to prove is that this was a sale that was done with design. In order to do that, that's why the past experience with Byron Roshell [is relevant] and that's why that call was for sale and not casual exchange.

THE COURT:            [Defense Counsel]?

DEFENSE COUNSEL:    First of all, that's pretty late notice on the 404B. Secondly, the State has to prove by clear an[d] convincing evidence that this actually took place. And when we don't even know which dates these alleged sales took place on and where, how am I supposed to offer up any evidence to rebut this blanket statement that Mr. Roshell sold to him many times in the past[?] Third, this is complete propensity evidence. That's all it's being offered for. [The Prosecutor] has already put on proof to show that this was done with design by saying that Mr. Martin called up Mr. Roshell and said, hey, I need to buy drugs, I need $20 worth of drugs, and Mr. Roshell came down and supplied that drug. That's the elements of a sale.

This issue of casual exchange has nothing to do with whether or not he sold to him before in the past. That's simply propensity, and there's nothing here in this description to say that – I mean, this is absurd for him to say that he intended to sell rather than intended to do a casual exchange. Intent is not even an element of this crime. I think the prejudicial impact is obvious and horrific in this case.

THE COURT:            All right. Well, with regard to the notice obviously Mr. Martin just pled guilty this morning, so the State would be hard-put to give notice of that. But now we're taking up out of the 404B as to whether or not there were other crimes, acts, or wrongs. And it would be offered for some purpose other than propensity, and I have to hold a hearing outside the jury's presence, which we're doing. And I have to determine there is a material issue that exists other than the conduct conforming with the character trait being proposed, that is, that he sells drugs. The issue at this trial, it would appear coming through all the witnesses, is that the informant is lying, that this didn't happen, that, you know, there's no documentation of any of this. Mr. Martin is testifying that he called the defendant . . . from a [cell phone] . . . that [the confidential informant] gave him and he happened to call Mr. Roshell. I think there is a material issue other than . . . propensity, and that would be the relationship of the parties of why he would call him. It's just not out of the blue. He knew who to call.

-7-

I'm going to instruct the jury that they're to consider it only as sort of a complete story of the crime and the relationship of the parties. And they're not to consider it for any other reason. Now, obviously you'll be allowed to cross-examine him about that issue. I'm going to allow you to ask that question.

DEFENSE COUNSEL: Your Honor, may I ask why you believe -- which date are we talking about in terms of a prior sale? This blanket --

THE COURT: That he has dealt with him in the past. [Defense Counsel], you do[n't] have to --

DEFENSE COUNSEL: A blanket allegation is impossible for me to confront, especially when I'm hearing about it --

THE COURT: [Defense Counsel], listen to me. Listen to me. If somebody comes in here and testifies -- not in this case -- but that their spouse has beaten them on many occasions, they don't have to give you dates and times for that either. You know, it's a relationship of the parties. These people are doing business together; okay? He says he does it on -- you can cross-examine him about all that, but that doesn't keep it from coming in. He can't tell you when he did it or that sort of thing but . . . [ellipsis in transcript]

DEFENSE COUNSEL: What is -- I'm not sure I understand Your Honor's ruling about why this is just -- to say they had done business together --

THE COURT: It's several things. It's a complete story of this crime. It is the relationship of the parties, why he out of the blue happened to call your client. He knows him. He's dealt with him. He's done business with him to call to come over there. I'm going to instruct the jury they can only consider it for that reason and that reason alone.

. . . .

-8-

        **A.  Failure to Make a Clear and Convincing Determination.**  Roshell contends that the trial court improperly admitted evidence under Rule 404(b) without finding proof of the prior act to be clear and convincing.

        We must initially determine whether the trial court substantially complied with the requirements of Rule 404(b).  The record shows that the trial court correctly held a 404(b) hearing outside the jury's presence.  The trial court also determined that a material issue existed other than conduct conforming to a character trait and stated the material issue, its ruling, and its reasoning for the ruling on the record.  Here, during the jury-out hearing, the trial court stated that the material issue was "the complete story of the crime" and the "relationship of the parties."  Further, during this hearing, the trial court ruled that the evidence was admissible to rebut the allegations by defense counsel that "the informant is lying, that this didn't happen, that . . . there's no documentation of any of this" and that "[Martin just] happened to call Mr. Roshell."  The trial court also found that the fact that Martin called Roshell for the drugs was significant because "[Martin] knew who to call."  The trial court explained, "[Martin has] dealt with [Roshell].  He's done business with [Roshell] to call [him] to come over there.  I'm going to instruct the jury they can only consider it for that reason and that reason alone."

        Although the trial court stated that "there is a material issue other than . . . propensity, and that would be the relationship of the parties . . . why [Martin] would call [Roshell]," we note that it failed to make an explicit finding that the probative value of Roshell's prior drug sales outweighed the danger of unfair prejudice.  In addition, the trial court failed to determine whether Roshell's prior drug sales were proven by clear and convincing evidence.  We acknowledge that Martin testified, without challenge by Roshell, that he knew "[Roshell] from the street" and "from doing time with him."  We also acknowledge, as argued by the State, that the trial court admitted at Roshell's sentencing hearing that it "should have" made this determination and explained, "I found clear and convincing evidence . . . of the relationship of the parties in terms of that [the evidence] could come in for a limited purpose.  I instructed the Jury accordingly. . . . I thought it was relevant, allowed it in, and thought the prejudice was . . . overcome by the probative value."  Regardless of these facts, the trial court still had an obligation to determine whether the prior act was proven by clear and convincing evidence.  Given the trial court's failure to make a clear and convincing evidentiary determination and its failure to weigh the probative value of this evidence against the unfair prejudicial effect, we conclude that the trial court did not substantially comply with the procedural requirements of Rule 404(b).  Compare State v. Albert Eugene Pleasant, No. M1998-00653-CCA-R3-CD, 2001 WL 741932, at *7-8 (Tenn. Crim. App., Nashville, July 3, 2001) (stating that the trial court did not substantially comply with Rule 404(b) requirements when it did not make a clear and convincing evidence determination or weigh the probative value of the evidence against the unfair prejudicial effect), with State v. Ray Anthony Nelson, No. 03C01-9706-CR-00197, 1998 WL 694971, at *8-9 (Tenn. Crim. App., Knoxville, Sept. 9, 1998) (stating that the trial court substantially complied with Rule 404(b) when it met all the requirements of the rule except the need to make a clear and convincing evidence determination) and Dubose, 953 S.W.2d at 652 (stating that the trial court did not substantially comply with Rule 404(b) when the trial court

-9-

failed to state the prior acts' relevance to a material issue on the record and failed to determine that the probative value of the evidence outweighed the unfair prejudicial effect). Therefore, we must review this issue without deference to the trial court's finding and conclusion.

We must now independently determine whether we would admit Roshell's prior drug sales based "on the evidence presented at the jury[-]out hearing." See Dubose, 953 S.W.2d at 653. During the Rule 404(b) jury-out hearing, Martin testified that he knew Roshell would have drugs to sell because "[he'd] done deals with him before." Martin acknowledged that Roshell "was in the business of selling drugs" and that he had bought drugs from Roshell "at least a dozen" times. On cross examination by defense counsel, Martin stated that although he could not give "dates and times," he said, "I dealt with [Roshell] on a daily basis if you really want to know." He also stated that "most of the time" there were no witnesses to the drug deals between Roshell and him.

Given the evidence presented at the jury-out hearing, we do not conclude that the trial court erred in admitting the evidence of Roshell's prior drug sales. The fact that Martin had purchased drugs from Roshell innumerable times in the past explained why Martin called Roshell when the confidential informant told him he needed some cocaine. It also explained Roshell's motive and intent in selling the drugs to the confidential informant on December 6, 2006. See McClean v. State, 527 S.W.2d 76, 83 (Tenn. 1975)(evidence of pharmacist's prior illegal sale of controlled substance to informer admitted to establish continuing relationship and intent to commit crime). Further, as the State argued, the introduction of Roshell's prior drug sales refuted defense counsel's allegations that Roshell was only guilty of a casual exchange of drugs. We conclude that the evidence of Roshell's prior drug sales was proven by clear and convincing evidence. In addition, for the reasons we have previously stated, we conclude that the probative value of Roshell's prior acts outweighed any unfair prejudice. Therefore, the trial court acted within its discretion in admitting evidence of Roshell's prior drug sales.

**B. Whether the Prior Bad Acts were Contextual Background Evidence.** Roshell argues that the evidence of his prior bad acts does not meet the test for admissibility of "contextual background" evidence as stated in State v. Gilliland, 22 S.W.3d 266, 272 (Tenn. 2000). He also contends that the evidence of his prior drug sales was irrelevant and could only be considered by a jury as propensity evidence. In Gilliland, the Tennessee Supreme Court set forth a test for the admissibility of evidence of other crimes, wrongs, or acts that is relevant only for providing contextual background:

> [W]hen the state seeks to offer evidence of other crimes, wrongs, or acts that is relevant only to provide a contextual background for the case, the state must establish, and the trial court must find, that (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury

-10-

confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Id. The language of the aforementioned test is specifically restricted to "evidence of other crimes, wrongs, or acts that is relevant only to provide a contextual background for the case[.]" Id. (emphasis added); see State v. Leach, 148 S.W.3d 42, 58 (Tenn. 2004).

Here, the State did not offer the evidence of Roshell's prior drug sales as contextual background evidence. In this case, defense counsel intimated that the drug transaction either did not take place or that the confidential informant and Martin were lying about Roshell's selling the drugs. As we have already concluded in the previous section, the evidence of Roshell's prior drug dealing was relevant to prove his intent and motive in the instant case and was necessary to refute the allegation that Roshell was guilty of a casual exchange of drugs rather than a sale. Therefore, because the evidence of Roshell's prior drug sales was relevant for reasons other than to provide a contextual background (i.e., motive, intent, and to refute a casual exchange of drugs), we conclude that the test in Gilliland is inapplicable.

**C. Whether the Jury Instructions Heightened the Risk that the Jury would Misuse the Prior Bad Acts Evidence.** Roshell contends that the trial court erred because it "instructed the jury inconsistently with its own ruling during the 404(b) hearing." He also argues that because the evidence of his prior drug sales was merely propensity evidence, the trial court's decision to instruct the jury on motive and intent increased the risk that the jury would misuse the prior act evidence.

At the conclusion of the 404(b) hearing, the trial court ruled, "I'm going to instruct the jury that they're to consider [the evidence of Roshell's prior drug sales] only as sort of a complete story of the crime and the relationship of the parties. And they're not to consider it for any other reason." After admitting Martin's testimony that Roshell was "in the business of selling drugs," the Court gave the following instruction to the jury:

Ladies and gentlemen, you have heard that the defendant may have been involved in other criminal behavior other than that for which he is now on trial. You may not consider such evidence to prove his disposition to commit such a crime as that on trial. You may only consider it for the limited purpose as stated. That is, whether or not this is a complete story of the crime, that is, such evidence may be considered by you whether the prior behavior and the present alleged crime are logically related or connected or are necessary for a complete account thereof or to show motive. That is, such evidence may be considered by you if it tends to show a motive of the defendant for the commission of the offense presently charged or his intent. That is, such evidence may be considered by you if it tends to establish that the defendant actually intended to commit the crime for which he is presently

-11-

charged. Such evidence of the other crimes, if considered by you for any purpose, must not be considered for any other purpose than I have just stated.

After the close of proof, the trial court gave the following jury instruction regarding Rule 404(b) of the Tennessee Rules of Evidence:

> If from the testimony you find that a witness has been convicted of a crime or has been involved in criminal behavior, you may only consider such testimony for its effect, if any, upon the witness' credibility.
>
> If from the proof you find that the defendant has engaged in criminal behavior other than that for which he is on trial, you may not consider such evidence of prior behavior to prove his disposition to commit such a crime as that on trial.
>
> This evidence may only be considered by you for the limited purpose of determining whether it provides:
>
> (a)    the complete story of the crime; that is, such evidence may be considered by you where the prior criminal behavior and the present alleged crime are logically related or connected or is necessary to prove the one charged or the prior behavior is necessary for a complete account thereof.
>
> (b)    motive; that is, such evidence may be considered by you if it tends to show a motive of this defendant for the commission of the offense presently charged.
>
> (c)    the defendant's intent; that is, such evidence may be considered by you if it tends to establish that the defendant actually intended to commit the crime with which he is presently charged.
>
> Such evidence of other criminal behavior, if considered by you for any purpose, must not be considered for any purpose other than that specifically stated
>
> . . . .

As an initial matter, because Roshell did not object to the trial court's jury instructions on this issue at trial and did not include this argument in his motion for a new trial, we conclude that he failed to preserve this issue for appeal. See Tenn. R. App. P. 3(e) (providing that the defendant's failure to raise an issue of error, other than sufficiency of the evidence or sentencing, in a motion for a new trial waives that issue for purposes of appellate review); Tenn. R. App. P. 36(a) (stating that

-12-

relief on appeal is generally not available where a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error"). Despite Roshell's waiver of this issue for appellate review, we fail to see how the trial court's ruling in the 404(b) hearing was not consistent with its two instructions to the jury on this issue. In reaching this decision, we note that the Tennessee Supreme Court has determined that "[e]vidence proving motive necessarily serves the purpose of completing the story of the crime." Leach, 148 S.W.3d at 58; see also State v. Robert Hood, No. W2004-01678-CCA-R3-DD, 2005 WL 2219691, at *22 (Tenn. Crim. App., Jackson, Sept. 13, 2005) ("Motive is a relevant circumstantial fact that refers to why a defendant did what he did."). In addition, we recognize that the trial court's assertion that the evidence was relevant to the "relationship of the parties" could easily be interpreted to mean that the evidence was relevant to Roshell's intent and motive because of his relationship with Martin. We have already concluded that the evidence of Roshell's prior drug sales was relevant to prove his intent and motive and was necessary to refute the allegation that Roshell was guilty of a casual exchange of drugs. In light of this conclusion, the trial court's instructions that the evidence could be considered for the limited purpose of motive, intent, or providing the complete story of the crime were proper.

Roshell's second argument regarding the instructions heightening the risk that the jury would misuse the evidence is unavailing as well. The trial court's instructions made it clear that the jury was not to consider the fact that Roshell was "in the business of selling drugs" as propensity evidence. In order to determine whether a jury instruction is proper, this court must consider the jury charges in their entirety. Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 446 (Tenn. 1992). Here, both instructions explained, "[Y]ou may not consider such evidence of prior behavior to prove his disposition to commit such a crime as that on trial. . . ." We must presume that the jury followed the trial court's two instructions regarding this evidence. See State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). Roshell is not entitled to relief on this issue.

**II. Sufficiency of the Evidence.** Roshell contends that the evidence presented against him at trial was insufficient to convince any rational trier of fact that he was guilty of the sale of cocaine beyond a reasonable doubt. He also argues that the evidence, at most, could only convict him of casual exchange of a controlled substance under Tennessee Code Annotated section 39-17-418 (2006) because the evidence established that "the transaction in question was spontaneous, happened without design, involved a very small amount of drugs[,] and did not result in any pecuniary gain for the defendant." He further argues that the confidential informant and Martin failed to offer credible evidence against him that would support his conviction. The State responds that the evidence was more than sufficient to find Roshell guilty of the sale of cocaine beyond a reasonable doubt. It also argues that the jury heard defense counsel's attacks on the confidential informant's and Martin's credibility and chose to credit their testimony.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable interferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651,

659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this Court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 442 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977), and <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. <u>State v. Odom</u>, 923 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this Court shall not "reweigh or reevaluate the evidence." <u>State v. Philpott</u>, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing <u>State v. Cabbage</u>, 571 S.W.2d 832, 836 (Tenn. 1978), <u>superseded by statute on other grounds as stated in</u> <u>State v. Barone</u>, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Id.</u> (citation omitted).

In order to convict a defendant of the sale of less than .5 grams of cocaine under Tennessee Code Annotated section 39-17-417 (2006), the State must prove beyond a reasonable doubt that the defendant knowingly sold less than .5 grams of cocaine. T.C.A. § 39-17-417(a)(3), (c)(2)(A) (2006). In preparation for the "buy-bust" operation, Detective Fisher searched the confidential informant to ensure that the informant did not possess any other money or drugs. He photographed the buy money, gave it to the informant to buy the drugs, and wired the informant to monitor the transaction by audio. He dropped the informant in the area where the transaction occurred. The confidential informant encountered Martin, someone with whom the informant had previously used drugs, and asked where he could get some drugs. Martin testified that he called Roshell for the drugs because he had purchased drugs from him before and because Roshell was in the business of selling drugs. Martin and the confidential informant testified that the confidential informant gave Roshell the money for the drugs, and in exchange, Roshell handed the cocaine to the informant. Detective Morton testified that he observed the "buy-bust" operation involving Roshell visually and through audio equipment, but he was unable to see the hand-to-hand exchange of drugs for money because Roshell blocked his line of vision. Detective Morton also stated that he recovered the buy money from the store's cashier just seconds after Roshell had purchased a bottle of water, compared the serial numbers, and confirmed that it matched the buy money. It was uncontested at trial that the substance Roshell gave to the informant contained cocaine base and weighed .2 grams. The jury in Roshell's case chose to credit Martin's and the informant's testimony that Roshell sold the drugs to the confidential informant during this transaction. Roshell's appearance following the cell phone

call, his role in the drug transaction, and his proximity to the buy money following the transaction are sufficient facts upon which a reasonable jury could have found him guilty. Therefore, we conclude the evidence is sufficient to sustain Roshell's conviction.

**Conclusion.** We conclude that the trial court acted within its discretion in admitting evidence of Roshell's prior drug sales and properly instructed the jury. We further conclude the evidence was sufficient for a jury to find Roshell guilty of sale of cocaine beyond a reasonable doubt. Accordingly, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE